# Exhibit 1

TODD G. VARE (Admitted *Pro Hac Vice*)
*todd.vare@btlaw.com*
DONALD E. KNEBEL (Admitted *Pro Hac Vice*)
*donald.knebel@btlaw.com*
JEFF BARRON (Admitted *Pro Hac Vice*)
*jeff.barron@btlaw.com*
C. JOHN BROWN (Admitted *Pro Hac Vice)*
*john.brown@btlaw.com*
JENNIFER SCHUSTER (Admitted *Pro Hac Vice*)
*jennifer.schuster@btlaw.com*
**BARNES AND THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana 46204-3535
Telephone; (317) 236-1313
Facsimile: (317) 231-7433

YURI MIKULKA (SBN 185926)
*ymikulka@ztllp.com*
BENJAMIN C. DEMING (SBN 233687)
*bdeming@ztllp.com*
**ZUBER & TAILLIEU LLP**
10866 Wilshire Boulevard, Suite 300
Los Angeles, California  90024
Telephone: (310) 807-9700
Facsimile: (310) 807-9701

Attorneys for Plaintiff Creative Integrated Systems, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| CREATIVE INTEGRATED SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NINTENDO OF AMERICA, INC.; NINTENDO CO., LTD.; MACRONIX AMERICA, INC.; and MACRONIX INTERNATIONAL CO., LTD.; and DOES 1-10 Inclusive,<br><br>Defendants. | CASE NO. CV-2735 AHM (VBKx)<br><br>**THIRD AMENDED COMPLAINT FOR INFRINGEMENT OF UNITED STATES PATENT NOS. 5,241,497 AND 5,812,461**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Creative Integrated Systems, Inc. ("Creative"), for its Third Amended Complaint against Defendants Nintendo of America, Inc. ("Nintendo

America"), Nintendo Co., Ltd. ("Nintendo Japan"), Macronix America, Inc. ("Macronix America"), and Macronix International Co., Ltd. ("Macronix Taiwan") (collectively, "Defendants") hereby alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action for infringement of United States Patent Nos. 5,241,497 ("the '497 Patent") and 5,812,461 ("the '461 Patent"). This action is based upon the Patent Laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 and 281-285. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. This Court has personal jurisdiction over the Defendants because each of the Defendants has conducted business and sells its products in this judicial district and, furthermore, each of the Defendants has committed acts of infringement in this judicial district by using, advertising, marketing, offering for sale, and selling products that infringe, directly or indirectly, the '497 and/or '461 Patents in this judicial district.

3. Venue is proper in this District under 28 U.S.C. §§ 1391(b), (c), and/or (d), and 28 U.S.C. § 1400(b), because, inter alia, each Defendant is subject to personal jurisdiction in this District. In addition, Defendants Nintendo Japan and Macronix Taiwan, as alien corporations, are deemed to reside in this District under 28 U.S.C. § 1391(d).

## THE PARTIES

4. Creative is a corporation organized under the laws of the State of California, having a principal place of business in this District at 1700 East Garry Avenue, Suite 112, Santa Ana, California, 92705.

5. Creative is the owner of and has the right to sue for infringement of the '497 and '461 Patents.

6. On information and belief, Defendant Nintendo Co., Ltd. ("Nintendo Japan") is a Japanese corporation, having a place of business at 11-1 Kamitoba

Hokotate-cho, Minami-ku, Kyoto, Japan. Nintendo Japan manufactures, markets, and sells, under the Nintendo label, a variety of video and other electronic games and entertainment systems for, among other things, importation, use, and/or sale into the United States, including this District.

7. On information and belief, Defendant Nintendo of America, Inc. ("Nintendo America") is a corporation organized under the laws of the State of Washington, having a place of business at 4820 150th Avenue NE, Redmond, Washington, 98052. Nintendo America is a wholly-owned subsidiary of Nintendo Japan. Nintendo America distributes, markets, and sells, under the Nintendo label, a variety of video and other electronic games and entertainment systems. Upon information and belief, Nintendo America is the exclusive seller of Nintendo-labeled products into the United States.

8. On information and belief, Defendant Macronix International Co., Ltd. ("Macronix Taiwan") is a Taiwanese corporation, having a place of business at No. 16, Li-Hsin Rd., Hsinchu Science Park, Hsinchu, Taiwan. Macronix Taiwan manufactures, markets, and sells, under the Macronix label, a variety of semiconductor chips for, among other things, importation, use, and/or sale into the United States, including this District.

9. On information and belief, Defendant Macronix America, Inc. ("Macronix America") is a corporation organized under the laws of the State of California, having a place of business at 680 N. McCarthy Blvd., Milpitas, California, 95035. Macronix America is a wholly-owned subsidiary of Macronix Taiwan. Macronix America distributes, markets, and sells Macronix-labeled semiconductor chips in the United States and in this District. Upon information and belief, Macronix America is the exclusive seller of Macronix-labeled devices into the United States.

# BACKGROUND

10. On August 31, 1993, the '497 Patent, entitled "VLSI Memory with Increased Memory Access Speed, Increased Memory Cell Density and Decreased Parasitic Capacitance" was duly and legally issued to Creative as assignee. The named inventor of the '497 Patent is Mr. Komarek. A copy of the '497 Patent is attached hereto as Exhibit A.

11. On September 22, 1998, the '461 Patent, entitled "Driver Circuit for Addressing Core Memory and a Method for the Same," was duly and legally issued to Creative as assignee. The named inventors on the '461 Patent are Mr. Komarek, Clarence W. Padgett, Robert D. Amneus, and Scott B. Tanner. A copy of the '461 Patent is attached hereto as Exhibit B.

12. In October 1988, James A. Komarek and Shiro Fujioka d/b/a California Integrated Systems entered into a development and license agreement with Ricoh Company, Ltd. ("Ricoh"), a Japanese Corporation, pursuant to which Mr. Komarek was to design and develop various Read-Only-Memory (ROM) designs having, among other things, fast memory access speed, high memory cell density, and reduced parasitic capacitance. Mr. Komarek subsequently formed Creative Integrated Systems, Inc. (the plaintiff in this action and the assignee/owner of the '497 and '461 Patents). Mr. Komarek conceived the inventions claimed in the '497 Patent and, along with the other named inventors, the inventions claimed in the '461 Patent during this ROM design work.

13. Beginning in mid- to late 1990, pursuant to the October 1988 development and license agreement, Ricoh made, or had made, ROM chips, which, upon information and belief, were sold to Nintendo Japan. Creative received royalty payments for such ROM chip sales made by Ricoh for Nintendo Japan up to approximately October 1997. Upon information and belief, in approximately 1997, Nintendo Japan ceased purchasing ROM chips made by Ricoh.

14.     In 1994, Creative made a proposal to Nintendo Japan to license Nintendo Japan (as well as other Nintendo entities, including Nintendo America) to make and sell ROM chips incorporating the invention of the '497 Patent. This proposal was made to Nintendo Japan through an intermediary, Kazuyoshi Matsuo. Mr. Matsuo was formerly employed by Ricoh and was the primary contact between Ricoh and Nintendo Japan relating to Creative's licensed ROM chip sales to Nintendo Japan. Mr. Matsuo subsequently became the president of Creative Design, Inc. of Japan (a separate and unrelated company from Creative). Creative was led to understand that Mr. Matsuo had intimate knowledge of Nintendo Japan's business organization, products, and personnel and could, therefore, act as an intermediary between Creative and Nintendo Japan. The use of such an intermediary with knowledge and experience in Japanese business practices and personal relationships with a Japanese company with which an American company desires to do business was a common practice at that time. Mr. Matsuo's primary contacts at Nintendo Japan during this time period were Nobuo Nagai, General Manager, Purchasing 1 Department, and Masayuki Uemura, General Manager, R&D 2.

15.     On February 23, 1994, Creative sent a written proposal to Nintendo Japan, through Mr. Matsuo, in which Creative proposed to license Nintendo Japan to make and sell ROM chips incorporating the invention of the '497 patent. This proposal was sent to Mr. Matsuo and, upon information and belief, provided to Nintendo Japan. This proposal identified Creative's '497 Patent and included the cover page of the '497 Patent.

16.     Following Creative's February 23, 1994 proposal, Mr. Matsuo requested, upon information and belief on behalf of Nintendo Japan, additional information regarding Creative's '497 Patent, including its priority date, a summary of its inventions, and its advantages over a patent assigned to and owned by Macronix Taiwan, U.S. Patent No. 5,117,389 ("the Macronix '389 Patent"). In March and April 1994, Creative provided Mr. Matsuo with the additional

information requested relating to Creative's '497 Patent, as well as its comparison to the Macronix '389 Patent. Mr. Matsuo subsequently represented to Creative that Nintendo's position was that the ROM chips being purchased by Nintendo Japan from Macronix Taiwan had a design layout as depicted in the Macronix '389 Patent and, therefore, allegedly was different from that of the claimed inventions of the Creative patents. Creative had no reason to disbelieve Mr. Matsuo's representation of Nintendo's position or the design of the ROM devices it was, at that time, purchasing from Macronix Taiwan for use in Nintendo-labeled products being marketed at that time.

      17.    In addition to providing Nintendo Japan with specific information identifying the '497 Patent, Creative also communicated to Nintendo Japan that Creative possessed a portfolio of patents and/or patent applications relating to ROM chips and related technology. For example, the '461 Patent, which issued on September 22, 1998, is based upon an application derived from the application that led to the issuance of the '497 Patent on August 31, 1993. Creative proposed a program in which its patent portfolio, including subsequently issued patents, in the same or similar technological field would be licensed to Nintendo Japan. Further, it was understood that Creative's license proposals for its '497 Patent, as well as subsequently issued patents in the same or substantially technological field, would be licensed to Nintendo Japan for the making, use, sale, offer for sale, and importation into the United States, such that Nintendo America would also be licensed to the Creative patents in order to sell Nintendo brand products incorporating the inventions of the Creative patents in the United States.

      18.    In furtherance of Creative's licensing proposals to Nintendo, Shiro Fujioka, Creative's Executive Vice President, and Mr. Matsuo personally met with Mr. Nagai and Mr. Uemura at Nintendo Japan's office in Japan in May 1994, at which meeting Creative further discussed its proposal to license Nintendo Japan the rights to the ROM chips incorporating the inventions of Creative's patents,

1  including the '497 Patent. Discussions between Creative and Nintendo continued
2  into 1995, but no agreement was ever reached.
3      19.    Upon information and belief, based at least on Creative's sale of ROM
4  chips to Nintendo Japan through Ricoh and Creative's communications to Nintendo
5  Japan regarding a license to make and sell ROM chips under Creative's patent
6  rights, including the '497 Patent, Nintendo Japan had actual knowledge of, or reason
7  to know of, Creative's '497 Patent as early as February 1994.
8      20.    Upon information and belief, based on the information exchanged
9  between Nintendo Japan and Macronix Taiwan relating to, for example, the sale and
10 manufacture of ROM chips and the existence and comparison of patents owned by
11 Creative and Macronix Taiwan, respectively, Macronix Taiwan had actual
12 knowledge of, or reason to know of, Creative's '497 Patent as early as February
13 1994.
14      21.    In November 2004, Nintendo Japan released for sale in Japan and
15 North America (including in the United States through Nintendo America) a
16 handheld game console marketed as the Nintendo DS™.  In June 2006, Nintendo
17 Japan released for sale in the United States through Nintendo America a handheld
18 game console marketed as the Nintendo DS™ Lite.  Nintendo Japan has
19 subsequently released Nintendo DSi™ and Nintendo DS XL™ handheld game
20 consoles for sale in the United States. Each of the Nintendo DS™, Nintendo DS™
21 Lite, Nintendo DSi™ and Nintendo DS XL™ handheld game consoles
22 (collectively, "Nintendo DS devices") are adapted to require the use of "game
23 cards" or cartridges ("Nintendo DS game cartridges"), which contain proprietary
24 mask ROM devices. The mask ROM devices for Nintendo DS game cartridges are
25 manufactured for Nintendo Japan by Macronix Taiwan. The mask ROM devices
26 used in the Nintendo DS game cartridges manufactured for Nintendo by Macronix
27 Taiwan incorporate the inventions of Creative's '497 and '461 Patents, without
28 authority by Creative.  The mask ROM devices used in the accused Nintendo DS

7

THIRD AMENDED COMPLAINT

1  game cartridges do not employ the mask ROM design depicted in the Macronix
2  '389 Patent, which was represented to be the mask ROM design used in Nintendo
3  products in approximately 1994. The infringing Macronix mask ROM devices used
4  in the Nintendo DS game cartridges include, at least the Macronix-labeled
5  MX23L51208 ROM device. According to Nintendo America, there were over 930
6  Nintendo DS game cartridge titles available as of August 2009.

7  22.  In November 2006, Nintendo Japan released for sale in the United
8  States through Nintendo America a new home video game console marketed as the
9  Nintendo Wii™. The Nintendo Wii™ console incorporates as part of its storage
10 memory a mask ROM device that is manufactured by Macronix Taiwan. The mask
11 ROM device used in the Nintendo Wii™ incorporates the inventions of Creative's
12 '497 and '461 Patents, without authority by Creative. Moreover, the mask ROM
13 devices used in the Nintendo Wii™ console do not employ the mask ROM design
14 depicted in the Macronix '389 Patent, which was represented to be the mask ROM
15 design used in Nintendo products in approximately 1994. The infringing Macronix
16 ROM device used in the Nintendo Wii™ includes, at least, the Macronix-labeled
17 MX23L4005 ROM device.

18 23.  Accordingly, since November 2004, Nintendo brand products
19 incorporating Macronix-manufactured ROM devices and embodying the inventions
20 claimed in the '497 and '461 Patents, including at least Nintendo DS game
21 cartridges and Nintendo Wii consoles, have been and are currently being used,
22 offered for sale, or sold, without authority from Creative, in the United States by
23 Nintendo America. Nintendo America has, therefore, committed acts of direct
24 infringement of Creative's '497 and '461 Patents.

25 24.  Nintendo Japan imports into the United States, and Nintendo America
26 sells or offers to sell within the United States, Nintendo DS game cartridges to
27 consumers, or end users, for use with Nintendo DS devices. Nintendo Japan imports
28 into the United States, and Nintendo America sells or offers to sell within the United

States, Nintendo Wii consoles to consumers, or end users. The end users of Nintendo DS game cartridges used with Nintendo DS devices and Nintendo Wii consoles directly infringe one or more method claims of the '497 Patent. Nintendo Japan and/or Nintendo America advertise, promote, direct, and instruct the use of Nintendo DS game cartridges and Nintendo Wii consoles by end users within the United States by, among other things, providing advertisements, promotional material, user manuals, brochures, and instructions to the end users. Such materials are provided with the packaging for Nintendo DS devices, Nintendo DS game cartridges, and Nintendo Wii products. Additionally, such materials, including promotional materials and instructions, are available to end users for downloading from Nintendo's website, www.nintendo.com. Upon information and belief, Nintendo Japan and/or Nintendo America created, directed the creation of, approved, and disseminated such materials promoting, advertising, and instructing the use of the accused Nintendo DS game cartridges and Nintendo Wii consoles to end users of those accused products within the United States, where the use of the accused Nintendo DS game cartridges and Nintendo Wii consoles by end users within the United States directly infringes one more method claims of the '497 Patent.

25. In addition to the mask ROM devices sold to Nintendo Japan for incorporation into Nintendo-labeled products sold in the United States, upon information and belief, Macronix Taiwan has made, used, offered for sale, or sold mask ROM chips incorporating the inventions of the '497 and '461 Patents, without authority from Creative, which are imported into the United States to its wholly owned subsidiary, Macronix America, for sale or offer for sale in the United States.

26. Accordingly, upon information and belief, Macronix brand ROM chips embodying the inventions claimed in the '497 and '461 Patents were made, used, offered for sale, sold and/or imported into the United States, without authority from

1 Creative, by Macronix America. Macronix America has, therefore, committed acts
2 of direct infringement of Creative's '497 and '461 Patents.
3     27. Upon information and belief, in at least the last six years, Macronix
4 Taiwan has sold to and continues to sell to Nintendo Japan, and Nintendo Japan has
5 purchased and continues to purchase from Macronix Taiwan, ROM chips
6 incorporating the invention of the '497 Patent for use in Nintendo brand products
7 that are imported, used, and/or sold, without authority from Creative, in the United
8 States, including Nintendo brand products distributed to Nintendo America for sale
9 in the United States and/or directly sold by Nintendo America in the United States.
10     28. Both Macronix Taiwan and Nintendo Japan had actual or constructive
11 knowledge of, or acted with deliberate indifference by disregarding, Creative's '497
12 Patent, during which time and at least for the last six years, that Macronix Taiwan
13 has sold to and continues to sell to Nintendo Japan, and Nintendo Japan has
14 purchased and continues to purchase from Macronix Taiwan, ROM chips
15 incorporating the invention of the '497 Patent for use in Nintendo brand products
16 that are imported, used, and/or sold without authority in the United States, including
17 Nintendo brand products distributed to Nintendo America for sale in the United
18 States and/or directly sold by Nintendo America in the United States and Macronix
19 brand products distributed to Macronix America for sale in the United States.
20     29. Upon information and belief, Macronix Taiwan is the exclusive
21 supplier of mask ROM devices for the Nintendo DS™, Nintendo DS™, and
22 Nintendo Wii™ products sold in the United States. Accordingly, Macronix Taiwan
23 specifically intended to encourage the making, use, sale, offer for sale, or
24 importation into the United States by Nintendo Japan and/or Nintendo America of
25 mask ROM devices (including at least the Macronix-labeled MX23L51208 ROM
26 device and MX23L4005 ROM device). Therefore, Macronix has induced the direct
27 infringement by Nintendo America of Creative's '497 Patent. In addition, Macronix
28 America is a wholly owned subsidiary of Macronix Taiwan and, upon information

1 and belief, is the exclusive seller of Macronix products in the United States.
2 Therefore, by selling, providing, or distributing mask ROM devices incorporating
3 the invention of Creative's '497 Patent to Macronix America for sale in the United
4 States, Macronix Taiwan specifically intended to encourage the making, use, sale,
5 offer for sale, or importation into the United States by Macronix America of ROM
6 chips incorporating the inventions of the '497 Patent, and therefore, has actively
7 induced the direct infringement by Macronix America of Creative's '497 Patent.
8 Further, and by way of example, upon information and belief, Macronix Taiwan
9 directed, approved of, or created materials promoting and advertising Macronix
10 ROM chips incorporating the invention of Creative's '497 Patent which materials
11 were intended to be used by Macronix America to promote the sales and use of such
12 ROM chips in the United States. One example of such materials is the website
13 (www.macronix.com) that advertises and promotes the use and sale of Macronix
14 ROM chips, including ROM Chips incorporating the invention of Creative's '497
15 Patent.
16      30.   Moreover, Macronix Taiwan's actual or constructive knowledge of
17 Creative's '497 Patent may be imputed to Macronix America, based at least on the
18 fact that Macronix America is a wholly owned subsidiary of Macronix Taiwan and
19 is the exclusive seller of Macronix products in the United States.
20      31.   Nintendo America is a wholly owned subsidiary of Nintendo Japan
21 and, upon information and belief, is the exclusive seller of Nintendo products in the
22 United States. The president of Nintendo America, Tatsumi Kimishima, is also on
23 the board of directors of Nintendo Japan, and, upon information and belief, there
24 were common officers or directors of Nintendo Japan and Nintendo America at all
25 times since at least 1994. Therefore, by selling, providing, or distributing Nintendo
26 products (including Nintendo proprietary game cards incorporating infringing mask
27 ROM devices for use in the Nintendo DS™, Nintendo DS™ Lite, and Nintendo
28 Wii™ products), Nintendo Japan specifically intended to encourage the making,

1  use, sale, offer for sale, or importation into the United States by Nintendo America
2  (Nintendo Japan's wholly owned subsidiary) of ROM chips incorporating the
3  invention of the '497 Patent, and therefore, has actively induced the direct
4  infringement by Nintendo America of Creative's '497 Patent.  For example, upon
5  information and belief, Nintendo Japan directed, approved of, or created materials
6  promoting and advertising Nintendo proprietary game cards for use in the Nintendo
7  DS™ and Nintendo DS™ Lite, which materials were intended to be used by
8  Nintendo America to promote the sales and use of such game cards in the United
9  States.  Similarly, and by way of example, upon information and belief, Nintendo
10 Japan directed, approved of, or created materials promoting and advertising the
11 Nintendo Wii™ product, which materials were intended to be used by Nintendo
12 America to promote the sales and use of the Nintendo Wii™ in the United States.
13 One example of such materials is the website (www.nintendo.com) that advertises
14 and promotes the use and sale of Nintendo proprietary game cards incorporating the
15 infringing Macronix ROM devices for use in Nintendo DS™ and Nintendo DS™
16 Lite products and the use and sale of the Nintendo Wii™ product incorporating the
17 infringing ROM devices.
18        32.    Moreover, Nintendo Japan's actual or constructive knowledge of
19 Creative's '497 Patent may be imputed to Nintendo America, based at least on the
20 fact that Nintendo America is a wholly owned subsidiary of Nintendo Japan, is the
21 exclusive seller of Nintendo products in the United States, and there are common
22 officers and directors to both Nintendo Japan and Nintendo America.
23        33.    As described in the foregoing paragraphs, each Defendant had actual
24 knowledge of, or acted in an objectively reckless manner in disregard of and with
25 deliberate indifference to, Creative's intellectual property rights, including
26 Creative's '497 Patent, such that each Defendant's infringement of the '497 Patent
27 is willful.
28

# FIRST CLAIM FOR RELIEF

## (INFRINGEMENT OF U.S. PATENT NO. 5,241,497 AGAINST ALL DEFENDANTS)

34. Paragraphs 1 through 33 are incorporated by reference as if restated fully herein.

35. Each of the Defendants has infringed at least one claim of the '497 Patent.

36. The exemplary infringing products include Macronix MX23L512 ROM devices as well as Macronix MX23L4005 ROM devices incorporated in Nintendo Wii game consoles and Macronix MX23L51208 ROM devices incorporated in Nintendo proprietary game cards used in the Nintendo DS products.

37. Upon information and belief, Nintendo America directly infringed at least one claim of the '497 Patent by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States, without authority by Creative, products including Macronix ROM devices such as Macronix MX23L4005 ROM devices incorporated in Nintendo Wii game consoles and Macronix MX23L51208 ROM devices incorporated in Nintendo DS game cartridges.

38. Upon information and belief, Nintendo Japan actively induced the direct infringement by other persons, including Nintendo America. Nintendo Japan had actual knowledge of, or acted in an objectively reckless manner in disregard of and with deliberate indifference to, the '497 Patent, at the time of the infringing acts, and further knew and intended that infringing products including Macronix ROM devices such as Macronix MX23L4005 ROM devices incorporated in Nintendo Wii game consoles and Macronix MX23L51208 ROM devices incorporated in Nintendo DS game cartridges were being used, sold, or offered for sale in, or imported into, the United States by its wholly owned subsidiary, Nintendo America, without authority by Creative.

39. In addition, Nintendo Japan and Nintendo America actively induced the infringement of one or more method claims of the '497 Patent. Nintendo Japan and Nintendo America had actual knowledge of, or acted in an objectively reckless manner in disregard of and with deliberate indifference to, the '497 Patent, at the time of the direct infringement by consumers and end users of the Nintendo DS game cartridges used with Nintendo DS devices and the Nintendo Wii product, and further knew and specifically intended (through instruction, advertising, promotion, and other means) that consumers and other end users in the United States would use the accused Nintendo DS game cartridges with Nintendo DS devices and also use the accused Nintendo Wii games, where such accused Nintendo products included infringing Macronix ROM devices such as Macronix MX23L4005 ROM devices incorporated in Nintendo Wii game consoles and Macronix MX23L51208 ROM devices incorporated in Nintendo DS game cartridges.

40. Upon information and belief, Macronix America directly infringed at least one claim of the '497 Patent by making, using, offering for sale, and/or selling in the United States, and/or importing into the United States, without authority by Creative, ROM devices including but not limited to Macronix MX23L512 ROM devices.

41. Upon information and belief, Macronix Taiwan actively induced the direct infringement by other persons, including Nintendo America and Macronix America. Macronix Taiwan had actual knowledge of, or acted in an objectively reckless manner in disregard of and with deliberate indifference to, the '497 Patent, at the time of the infringing acts, and further knew and intended that infringing products including Macronix ROM devices such as MX23L4005 ROM devices and Macronix MX23L51208 ROM devices were being used, sold, or offered for sale in, or imported into, the United States without authority—including but not limited to MX23L512 ROM devices being sold or offered for sale by Macronix America in the United States and the Macronix MX23L4005 ROM devices incorporated in

1 | Nintendo Wii™ game consoles and Macronix MX23L51208 ROM devices
2 | incorporated in Nintendo DS game cartridges being sold or offered for sale by
3 | Nintendo America in the United States.

42. Each of the Defendants knew of, or acted in an objectively reckless manner in disregard of and with deliberate indifference to, the '497 Patent at the time of the infringing acts, and further knew and intended that infringing products including Macronix ROM devices such as Macronix MX23L4005 ROM devices incorporated in Nintendo Wii game consoles and Macronix MX23L51208 ROM devices incorporated in Nintendo DS game cartridges were being used, sold, or offered for sale in or imported into the United States without authority.

43. Creative has been damaged by Defendants' infringement of the '497 Patent.

44. Defendants' infringement of the '497 Patent has been willful.

45. As a direct and proximate result of Defendants' infringement of the '497 Patent, Creative has been damaged in an amount yet to be determined.

**SECOND CLAIM FOR RELIEF**

**(INFRINGEMENT OF U.S. PATENT NO. 5,812,461 AGAINST DEFENDANTS MACRONIX AMERICA AND NINTENDO AMERICA)**

46. Paragraphs 1 through 45 are incorporated by reference as if restated fully herein.

47. Macronix America has infringed at least one claim of the '461 Patent.

48. Nintendo America has infringed at least one claim of the '461 Patent.

49. The exemplary infringing products include Macronix MX23L512 ROM devices as well as Macronix MX23L4005 ROM devices incorporated in Nintendo Wii game consoles and Macronix MX23L51208 ROM devices incorporated in Nintendo DS game cartridges.

50. Upon information and belief, Nintendo America directly infringed at least one claim of the '461 Patent by making, using, offering for sale, and/or selling

1  in the United States, and/or importing into the United States, without authority by
2  Creative, Macronix ROM devices such as Macronix MX23L4005 ROM devices
3  incorporated in Nintendo Wii game consoles and Macronix MX23L51208 ROM
4  devices incorporated in Nintendo DS game cartridges.

5      51.  Upon information and belief, Macronix America directly infringed at
6  least one claim of the '461 Patent by making, using, offering for sale, and/or selling
7  in the United States, and/or importing into the United States, without authority,
8  ROM devices including but not limited to Macronix MX23L512 ROM devices.

9      52.  Creative has been damaged by Defendants' infringements of the '461
10 Patent.

11     53.  As a direct and proximate result of Defendants' infringement of the
12 '461 Patent, Creative has been damaged in an amount yet to be determined.

**PRAYER FOR RELIEF**

WHEREFORE, Creative prays for relief and judgment as follows:

A.  That each Defendant, directly and/or indirectly, has infringed the '497 Patent;

B.  That each Defendants' infringement of the '497 Patent has been willful;

C.  That Defendants Macronix America and Nintendo America have infringed the '461 Patent;

D.  That Creative be awarded all damages adequate to compensate it for the infringements by each Defendant, such damages to be determined by a jury and, if necessary to adequately compensate Creative for the infringement, an accounting of all damages, and that all awarded damages be trebled pursuant to 35 U.S.C. § 284;

E.  That Creative be awarded pre-judgment and post-judgment interest pursuant to 35 U.S.C. § 284;

F.  That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that Creative be awarded the attorneys' fees, costs, and expenses incurred in prosecuting this action; and

G. That Creative be awarded such other and further relief as this Court deems just and proper.

Dated: January __, 2011

Respectfully submitted:

**BARNES AND THORNBURG LLP**
TODD G. VARE

By: _____
Attorneys for Plaintiff Creative Integrated Systems, Inc.

Dated: January ___, 2011

**ZUBER & TAILLIEU LLP**
YURI MIKULKA
BENJAMIN C. DEMING

By: _____
Attorneys for Plaintiff Creative Integrated Systems, Inc.

## JURY DEMAND

Creative respectfully demands a jury trial on all issues and claims so triable.

Dated: January ___, 2011        Respectfully submitted:

**BARNES AND THORNBURG LLP**
TODD G. VARE

By: _____
Attorneys for Plaintiff Creative Integrated Systems, Inc.

Dated: January ___, 2011        **ZUBER & TAILLIEU LLP**

YURI MIKULKA
BENJAMIN C. DEMING

By: _____
Attorneys for Plaintiff Creative Integrated Systems, Inc.