# Exhibit 1

TODD G. VARE (Admitted *Pro Hac Vice*)
  todd.vare@btlaw.com
DONALD E. KNEBEL (Admitted *Pro Hac Vice*)
  donald.knebel@btlaw.com
JEFF BARRON (Admitted *Pro Hac Vice*)
  jeff.barron@btlaw.com
C. JOHN BROWN (Admitted *Pro Hac Vice*)
  cjbrown@btlaw.com
JENNIFER SCHUSTER (Admitted *Pro Hac Vice*)
  jennifer.schuster@btlaw.com
**BARNES AND THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana 46204-3535
Telephone; (317) 236-1313
Facsimile: (317) 231-7433

YURI MIKULKA (SBN 185926)
  ymikulka@ztllp.com
BENJAMIN C. DEMING (SBN 233687)
  bdeming@ztllp.com
**ZUBER & TAILLIEU LLP**
10866 Wilshire Boulevard, Suite 300
Los Angeles, California 90024
Telephone: (310) 807-9700
Facsimile: (310) 807-9701

Attorneys for Plaintiff Creative Integrated Systems, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| CREATIVE INTEGRATED SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NINTENDO OF AMERICA, INC.; NINTENDO CO., LTD.; MACRONIX AMERICA, INC.; and MACRONIX INTERNATIONAL CO., LTD.; and DOES 1-10 Inclusive, <br><br> Defendants. | **CASE NO. CV10-2735 AHM (VBKx)** <br><br> **JURY TRIAL DEMANDED** <br><br> **PLAINTIFF'S RESPONSES TO DEFENDANT NINTENDO CO., LTD'S FIRST SET OF INTERROGATORIES PURSUANT TO FED. R. CIV. P. (RELEVANT TO THE DEFENSES OF LACHES, ESTOPPEL, and NOTICE UNDER 35 U.S.C. § 287)** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Creative Integrated Systems, Inc. ("Creative," "CIS", or "Plaintiff") hereby serves its objections and responses to Defendant Nintendo Co. Ltd.'s First Set of Interrogatories.

## GENERAL OBJECTIONS

Creative incorporates each of the following General Objections into its Responses to Defendant's Requests:

A.  Creative objects to each Interrogatory to the extent that it calls for documents or information protected from discovery by the attorney-client privilege, the litigation work-product doctrine, any other common law or statutory privilege, and/or any extension of any of the foregoing privileges or protections (*e.g.*, the joint defense privilege and/or common interest doctrine). Such documents or information shall not be produced intentionally in response to the Requests, and any inadvertent production shall not be deemed a waiver of any privilege or protection with respect to such documents or information.

B.  Creative objects to each Interrogatory to the extent that it does not concern Defendants' defenses of laches, estoppel, or notice under 35 U.S.C. § 287(a), or to the extent that it exceeds the scope of Court-ordered discovery in this action.

C.  By stating that documents or information will be produced in response to a Interrogatory, Creative does not represent that such documents or information exist; are within Creative's possession, custody or control; or are otherwise available to Creative. Rather, Creative merely states that if such documents or information exist, are within Creative's possession, custody or control, are not subject to objection, and can be located in a reasonable search of the likely repositories of documents or information, such documents or information shall be produced to the extent consistent with Creative's responses and objections.

D. Creative's responses and associated productions are made to the best of its present knowledge, information, and belief based upon information and documents currently available to Creative and a reasonable search for responsive documents and information. Creative's responses and document productions are subject to modification and/or supplementation as further investigation may warrant. Creative reserves the right to continue discovery and investigation into this matter and to present additional information discovered after the date of this response at trial or otherwise.

E. By this response Creative preserves, and does not waive, any objections or other challenges as to the competency, relevance, materiality or admissibility of evidence of any document or information identified or produced herein, whether in this or any other action.

F. Creative objects to any instruction, definition, or Request as overly broad and unduly burdensome to the extent that it calls for discovery of documents or information that are not relevant to the claims, defenses or subject matter of this litigation, not reasonably calculated to lead to the discovery of admissible evidence, or unlimited in scope or time.

G. Creative objects to any instruction, definition, or Interrogatory to the extent that it purports to impose obligations upon Creative greater than or different than those contained in the Federal or Local Rules or any other applicable law. For example, Instructions D, G and H purport to impose obligations greater than those imposed by the Federal Rules of Civil Procedure and/or the Local Rules of this District. Creative assumes no burdens greater than those imposed by these rules and laws in responding to these Interrogatories.

H. Creative objects to each Interrogatory to the extent that it utilizes words or phrases that (i) assume facts not established; (ii) constitute, form, imply, require or call for a legal conclusion; or (iii) incorporate characterizations or opinions. Creative further objects to each Interrogatory to the extent that it contains

3

incomplete, inaccurate or misleading descriptions or characterizations of facts, events and pleadings in this action. By providing these responses, Creative undertakes no obligation to search for or produce documents that may be responsive under a correct or complete view of the facts; Creative will respond to the Interrogatories as served by Defendant, even if such Interrogatories are erroneous or incomplete.

I.   Creative objects to each Interrogatory to the extent the documents requested are in the public domain. Creative undertakes no obligation to search for or produce documents that are in the public domain and equally available to Defendant.

## RESPONSES TO INTERROGATORIES

**Interrogatory No. 1.**   Identify each claim of the Patents-In-Suit that CIS contends was infringed by any defendant and for each of such asserted claim, identify which claim is alleged to be infringed by which accused product.

**Response:** CIS objects to this Interrogatory on the grounds that it seeks information neither relevant to nor reasonably calculated to lead to the discovery of admissible evidence relating to Defendants' affirmative defenses of laches, estoppel, and notice under 35 U.S.C. § 287. The Court permitted limited discovery on these affirmative defenses, for which Defendants bear the burden of proof. The question of "each claim of the Patents-in-Suit that CIS contends was infringed by any defendant" is not relevant to, and not reasonably calculated to lead to the discovery of admissible evidence on, the affirmative defenses of laches, estoppel, and notice under 35 U.S.C. § 287.

CIS also objects to this Interrogatory on the ground that it is premature under the Court's current case management and discovery schedule and, therefore, is overly broad and unduly burdensome. This Interrogatory seeks information regarding CIS's infringement contentions – namely, "each claim of the Patents-in-

4

Suit that CIS contends was infringed by any defendant" and by which accused product. Defendants have produced no documents and otherwise provided no discovery as to their products, including the products identified in the Second Amended Complaint alleged to infringe. Moreover, there is no case management schedule yet in place that requires CIS to provide its infringement contentions. Indeed, Defendants objected to any contention-based discovery relating to infringement, validity, enforceability, or damages, and instead proposed a limited, phased discovery period focused solely on Defendants' affirmative defenses that, according to Defendants, may (if successful) limit CIS's damages in this case. The Court, at Defendants' urging, adopted such a limited discovery plan. Accordingly, Defendants' attempt to obtain discovery directed to CIS's infringement contentions is premature.

**Interrogatory No. 2.**

State in detail all facts and identify all documents on which CIS relies to show that it satisfied the requirements of 35 U.S.C. Sec. 287(a) and is entitled to damages on allegedly infringing sales before this case was filed.

**Response:** CIS objects to this Interrogatory on the grounds that it incorrectly presumes CIS had, or currently has, any obligation to satisfy the requirements of 35 U.S.C. § 287(a). By its terms, 35 U.S.C. § 287(a) applies only to "[p]atentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article in into the United States." Based upon all the information presently available and known to CIS, neither CIS, nor any licensee of CIS, made, sold, or offered for sale within the United States any article patented under the Patents-in-Suit, or imported any such patented article into the United States. Furthermore, since at least 1998, neither CIS, nor any licensee of CIS, has made, sold, or offered for sale, within the United States or anywhere in the world any article patented under the Patents-In-Suit. The

5

"allegedly infringing sales" referenced in this Interrogatory relate to sales of Nintendo DS game cartridges containing certain Macronix-labeled Mask ROM chips and Nintendo Wii consoles containing certain Macronix-labeled Mask ROM chips, as identified in CIS's Second Amended Complaint. The Nintendo DS game cartridges were first sold in the United States in 2004 and the Nintendo Wii console was first sold in the United States in 2006. Therefore, 35 U.S.C. § 287(a) did not apply to CIS during the period of time in which Defendants began infringing the Patents-In-Suit based upon the accused Nintendo DS game cartridges containing certain Macronix-labeled Mask ROM chips and Nintendo Wii consoles containing certain Macronix-labeled Mask ROM chips, as identified in CIS's Second Amended Complaint, for example, paragraphs 21-22.

**Interrogatory No. 3.** State in detail all facts and identify all documents on which CIS relies as an explanation for the delay in filing this case, for purposes of avoiding laches.

**Response:** CIS objects to this Interrogatory on the grounds that it lacks foundation because it incorrectly presumes CIS delayed filing this case. CIS also objects to this Interrogatory on the grounds that it improperly seeks to transfer the burden of proof for Defendants' affirmative defense of laches to CIS. Subject to and without waiving its objections, CIS states that CIS has no burden to "avoid[]  laches" or provide "an explanation for the delay" because there was no delay and there is no presumption of laches. CIS did not have knowledge of Defendants' infringements of the Patents-In-Suit based on the Macronix-labeled Mask ROM chips used in Nintendo DS game cartridges and Nintendo Wii consoles until 2009, as alleged in Plaintiff's Second Amended Complaint.

**Interrogatory No. 4.**
State whether the ROM chips incorporating the inventions of the '497 and

'461 patents (or their packaging) that were made by Ricoh and sold to Nintendo Japan for use in Nintendo Japan's products for importation, use, and/or sale in the United States, as alleged in paragraph 13 of the SAC, were marked with the number of the '497 or the '461 patents. If the answer is "yes", state which patent number was marked, which company or individual caused them to be marked, and identify all facts, documents, and things that support the answer and any individuals who have knowledge of the marking.

**Response:** CIS objects to this Interrogatory on the grounds that the reference to "marking" is vague and ambiguous. The only requirement to "mark" patented articles is statutory-based, *see* 35 U.S.C. § 287(a). To the extent this Interrogatory's reference to "marking" is based upon 35 U.S.C. § 287(a), CIS objects to this Interrogatory on the grounds that it incorrectly presumes CIS or its licensee had, or currently has, any obligation under 35 U.S.C. § 287(a). Subject to and without waiving its objections, CIS states that based upon all the information presently available and known to CIS, neither CIS nor Ricoh made, sold, or offered for sale within the United States any article patented under the Patents-in-Suit, or imported any such patented article into the United States. Furthermore, since at least 1998, neither CIS nor Ricoh has made, sold, or offered for sale, within the United States or anywhere in the world any article patented under the Patents-In-Suit. CIS further states that it presently has no knowledge that any Mask ROM Chips covered by the '497 Patent and made by Ricoh and sold to Nintendo Japan were actually used in any Nintendo game product or, even if used in a Nintendo game product, were sold or offered for sale within the United States. Moreover, any such sales of Ricoh Mask ROM chips to Nintendo Japan or any other entity ceased in 1997 or early 1998, prior to the issuance of the '461 Patent.

**Interrogatory No. 5.**

Describe in detail all activities undertaken by CIS, or by any party acting on

7

1  behalf of CIS, to investigate whether any of the defendants' products infringe the
2  Patents-In-Suit, including a description of the activities, the product investigated, the
3  date and location where they were performed, the parties conducting such activities,
4  and the results.

5       **Response:** CIS objects to this Interrogatory on the grounds that it seeks
6  information protected from disclosure or discovery by the attorney-client privilege
7  and/or work product doctrine. Subject to and without waiving its objections, CIS
8  provides the following non-privileged, non-work product information: On October
9  9, 2008, CIS signed an agreement with Pachira IP. Pursuant to that agreement, and
10 beginning in October 2008, Pachira investigated possible infringement of CIS
11 patents, including by Macronix (MXIC or MXA) and/or Nintendo (NCL or NCA) in
12 anticipation of litigation against Macronix and/or Nintendo. Pursuant to that
13 agreement, CIS understood that Pachira would retain Chipworks (a Canadian
14 company) as a consultant to undertake technical analysis or reverse engineering of
15 potentially infringing products in order to determine infringement in anticipation of
16 litigation. Subsequently, in January 2009, a Macronix-labeled ROM device, part
17 number MX23L4005-24C1MAC, was obtained from a Nintendo Wii game console
18 and reverse engineered to determine infringement in anticipation of litigation against
19 Macronix and Nintendo. In May 2009, a Macronix-labeled ROM device, part
20 number MX23L51208-15D2, was obtained from a Nintendo DS game cartridge and
21 reverse engineered to determine infringement in anticipation of litigation against
22 Macronix and Nintendo. This reverse engineering work product described above
23 was performed by Chipworks and Pachira, on behalf of CIS, to determine
24 infringement in anticipation of litigation. This work was performed in Ottawa,
25 Canada. The content and substance of the reverse engineering work performed for
26 CIS is protected from discovery as work product performed on behalf of CIS in
27 anticipation of litigation.
28

**Interrogatory No. 6.**

Does CIS contend that the products accused of infringement in this case are different, for purposes of infringement of the Patents-In-Suit, from the "design layout as depicted in the Macronix '389 Patent", as referred to in par. 16 of the SAC? If so, identify for which accused product(s) this is contended by CIS, and specifically describe the differences.

**Response:** CIS objects to this Interrogatory on the grounds that it seeks information protected from disclosure or discovery by the attorney-client privilege and/or work product doctrine. Subject to and without waiving its objections, CIS states that the design layout depicted in the Macronix, or MXIC, '389 Patent is different from the products accused of infringement in this case – *i.e.*, the Mask ROM Chips identified in the Second Amended Complaint and incorporated into the Nintendo game cartridges and Nintendo Wii console. For example, CIS understood from its review of the Macronix '389 Patent in 1994 that Figures 4 and 8 of that patent depicted two different design layouts. The design layout of contacts between the metal and diffusion layers of the embodiments of the Macronix '389 patent differs from the design layout of contacts for the ROM cell arrays in the accused products.

**Interrogatory No. 7.**

Describe in detail all the facts and circumstances that prompted CIS to investigate whether any current products of defendants infringe the Patents-In-Suit.

**Response:** CIS objects to this Interrogatory on the grounds that it seeks information protected from disclosure or discovery by the attorney-client privilege and/or work product doctrine. Subject to and without waiving its objections, CIS states Pachira IP approached CIS in 2008 with a proposal that Pachira IP investigate products to determine if there was infringement of any CIS patents. After Pachira IP and CIS signed the October 9, 2008 agreement, an investigation was begun of

9

products, including the accused products, in anticipation of litigation for infringement of the Patents-In-Suit.

**Interrogatory No. 8**

During the period 1996-2008, did CIS take any steps to investigate whether any products of any of the defendants infringed the Patents-In-Suit? If so, describe in detail what steps were taken, state when they were taken, who took them, and identify any documents relating to such steps.

**Response:** CIS objects to this Interrogatory on the grounds that it seeks information protected from disclosure or discovery by the attorney-client privilege and/or work product doctrine. CIS also objects to this Interrogatory to the extent that it presumes that CIS had an obligation to investigate whether any products of any of the defendants infringed the Patents-In-Suit. Subject to and without waiving these objections or the General Objections, during the period from 1996-2008, CIS had no information that would suggest that the accused products identified in its Second Amended Complaint infringed the Patents-In-Suit. Moreover, upon information and belief, none of the accused products was made, used, offered for sale, or sold in, or imported into, the United States until 2004, and therefore there could be no reason to take any steps to investigate the accused products until 2004 at earliest. CIS also had no information that would suggest that Defendants' representations in 1994 that their use of Mask ROM chip designs based upon the designs depicted in the MXIC '389 Patent were false or that Defendants had changed or modified their Mask ROM chip design in any relevant respect. For these reasons, and others, CIS did not have cause to investigate whether any products of any of the defendants infringed the Patents-In-Suit during the period 1996-2008.

Dated: November 4, 2010

Respectfully submitted:

**BARNES AND THORNBURG LLP**

C. JOHN BROWN

By: _____
Attorneys for Plaintiff Creative Integrated Systems, Inc.

11

## VERIFICATION

I declare under the penalty of perjury that I am an authorized agent of Creative Integrated Systems, Inc. for purposes of executing as to the facts contained in the foregoing interrogatories; that some of the matters stated in the foregoing interrogatories are not within my personal knowledge; that the facts stated in the foregoing interrogatories have been assembled by employees and/or authorized agents of Creative Integrated Systems, Inc.; and that I am informed by those employees and/or authorized agents and believe that the facts stated in the foregoing interrogatories are true. I express no opinion regarding any legal issues set forth in such interrogatories or responses, and/or regarding the application of law to fact.

Dated: __November 1__, 2010

CREATIVE INTEGRATED SYSTEMS, INC.

By: _[signature]_

Printed: __James A. Komarek__

Title: __President__

INDS02 CJBROWN 1137669v1

| | | |
|---|---|---|
| 1 | Dated: November 3, 2010 | Respectfully submitted: |
| 2 | | |
| 3 | | **BARNES AND THORNBURG LLP** |
| 4 | | C. JOHN BROWN |

By: _____
Attorneys for Plaintiff Creative Integrated Systems, Inc.

11

# CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November, 2010, a copy of the foregoing document was served by electronic mail and United States Mail, first-class postage prepaid, on the following counsel of record:

| | |
|---|---|
| Micky Gill<br>Michael J. Shea<br>mjs@nixonvan.com<br>Nixon & Vanderhye P.C.<br>901 North Glebe Road<br>11 Floor<br>Arlington, Virginia 22203<br>Tel: (703) 816-4000<br>Fax: (703) 816-4100<br><br>Attorney for Defendants<br>NINTENDO OF AMERICA, INC. AND NINTENDO C.O., LTD | Howard N. Wisnia<br>Howard.Wsnia@bakermckenzie.com<br>D. James Pak<br>D.JamesPak@bakermckenzie.com<br>Baker & Mckenzie LLP<br>12544 High Bluff Drive, Third Floor<br>San Diego, CA 92103-3051<br>Tel.: (858) 523-6200<br>Fax: (858) 259-8290<br><br>Attorney for Defendants<br>NINTENDO OF AMERICA, INC.<br>NINTENDO CO., LTD. And<br>MACRONIX AMERICA, INC. |
| Daniel J. O'Connor (pro hac vice)<br>Daniel O'Connor@bakermckenzie.com<br>Edward K. Runyan (pro hac vice)<br>Edward.Runyan@bakermckenzie.com<br>Baker & McKenzie LLP<br>130 E. Randolph Street<br>Chicago, IL 60601<br>Tel.: (312) 861-8000<br>Fax: (312) 925-7153<br><br>Attorneys for Defendants<br>NINTENDO OF AMERICA, INC. AND NINTENDO CO., LTD. And MACRONIX AMERICA, INC. | Todd G. Friedland<br>todd@sf-layers.com<br>Stephens Friedland LLP<br>4695 MacArthur Court, Suite 1550<br>Newport Beach, CA 92660<br>Tel.: (949) 468-3200<br>Fax: (949) 468-3201<br><br>Attorney for Defendant<br>MACRONIX **AMERICA, INC.** |

C. John Brown

12