STEPHEN R. MICK (SBN 131569)
 *stephen.mick@btlaw.com*
DEVIN STONE (SBN 260326)
 *dstone@btlaw.com*
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90076-3210
Telephone:   (310) 284-3880
Facsimile:    (310) 284-3894

TODD G. VARE (admitted *Pro Hac Vice*)
 *todd.vare@btlaw.com*
DONALD E. KNEBEL (admitted *Pro Hac Vice*)
 *donald.knebel@btlaw.com*
JEFF M. BARRON (admitted *Pro Hac Vice*)
 *jeff.barron@btlaw.com*
AARON STASER (admitted *Pro Hac Vice*)
 *aaron.staser@btlaw.com*
**BARNES AND THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana 46204-3535
Telephone:   (317) 236-1313
Facsimile:    (317) 231-7433

Attorneys for Plaintiff CREATIVE INTEGRATED
SYSTEMS, INC.

*List of counsel continued on the second page*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| **CREATIVE INTEGRATED SYSTEMS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NINTENDO OF AMERICA INC.; NINTENDO CO., LTD.; MACRONIX AMERICA, INC.; and MACRONIX INTERNATIONAL CO., LTD.,**<br><br>**Defendants.** | **Case No. 2:10-CV-2735 PA (VBK)**<br><br>**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(a)**<br><br>Trial: March 4, 2014<br>Courtroom: 15<br>Judge: Hon. Percy Anderson |

Plaintiff Creative Integrated Systems, Inc. ("Plaintiff" or "CIS") respectfully moves for judgment as a matter of law in its favor on each of the claims and defenses presented by Defendants in this matter, including that:

(1)   Nintendo of America Inc. directly infringes claims 5-7 of the '497 patent (claims 5-7) (Doc. 364-1 at 6);

(2)   Defendants have failed to demonstrate that any claim of the '497 patent is invalid;

(3)   Defendants have failed to demonstrate that any claim of the '497 patent is invalid for incorrect inventorship;

(4)   If the inventorship of any patent claim is held to be incorrect, Defendants have failed to demonstrate that the patent should not be corrected as set forth in 35 U.S.C. § 256; and

(5)   The doctrine of patent marking does not limit patent damages in this lawsuit;

(6)   Defendants' damages conclusion is unsupported under governing law.

# I.   LEGAL STANDARDS

Fed. R. Civ. P. 50(a) provides that a court will grant a judgment as a matter of law only where "a reasonable jury would not have a legally sufficient evidentiary basis" to find for the non-moving party. As the Rule provides:

(1) **In General.** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

A. resolve the issue against the party; and

B. grant a motion for judgment as a matter of law against the party on a claim or defense that, under controlling law, can be maintained or defeated only with a favorable finding on that issue.

In making the determination of whether a Rule 50 motion should be grant the

1

court is required to view the evidence in the light most favorable to the non-moving part and draw all inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). A Rule 50(a) motion should only be granted only if "there can be but one reasonable conclusion as to the verdict" and no reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In reviewing a motion pursuant to 50(a), a court is not permitted to make credibility determinations or to weigh the evidence. *Santa Clara Valley Distrib. Co., Inc. v. Pabst Brewing Co.*, 556 F.2d 942, 944 (9th Cir. 1977).

## II.  ARGUMENT

### A.  Nintendo of America Inc. Directly Infringes Claims 5-7 of the '497 Patent.

The undisputed evidence is that, under a correct construction of the claims, Nintendo of America, Inc. infringes claims 5-7 of the '497 patent. Defendants' First Amended Answer to the Third Amended Complaint admit that Nintendo of America sells the accused "standard" and "derivative" memory arrays as part of Nintendo game products in the United States during the relevant period (April 14, 2004 through April 14, 2010). Dkt. 325 at ¶¶ 21-24. Mr. Pellegrino, Plaintiff's damages expert, also identified multiple financial records that demonstrated sales of the accused "standard" and "derivative" memory arrays in the United States. Tr. 3/7/2014, Vol. 1 at 18:13-23:13; Tr. Ex. 402, 403. Defendants' expert, Mr. Hampton, confirmed the U.S. sales during his direct examination on Tuesday.

Mr. Wilson, Plaintiff's technical expert, reviewed the accused standard and derivative arrays and found that they met every element of the claims. Tr. 3/5/2014 Vol. 1 at 129:23 to130:5. In reaching his conclusions, Mr. Wilson performed a detailed, claim-element-by-claim-element analysis for both the standard and the derivative arrays. Tr. 3/5/2014 Vol. 1 at 89:12 to130:5. He followed the Federal Circuit's and this Court's claim construction rulings in this case. He identified the location of each element of the claims 5-7 asserted claims of the '497 patent in the accused standard

memory array. Tr. 3/5/2014 Vol. 1 at 88:20 to 90:15, 92:8 to 93:8, 93:18 to 98:8, 98:22 to 102:12, 102:22 to 103:8; 103:19 to 105:5, 106:15 to 114:21, 115:21 to 130:5. He then identified the location of each element of asserted claims 5-7 of the '497 patent in the derivative memory array. Tr. 3/5/2014 Vol. 1 at 90:16 to 92:6, 93:9 to 96:13, 98:10-21, 98:22 to 101:23, 102:12-21, 103:9-17, 105:12-25, 106:15 to 114:5, 114:22 to 115:20, 117:19 to 120:17, 121:7 to 130:5. Because each element is literally present in the standard and derivative memory arrays, the accused "standard" and "derivative" memory arrays infringe the '497 patent. As stipulated by the parties in the Pre-Trial Conference Order, Mr. Wilson's findings extend to all of the Mask ROM chips in the lawsuit that have the standard or derivative array. Final Pretrial Conference Order at p. 9.

Defendants presented no evidence to the contrary. Mr. Stevenson, Defendants' expert, relied on improper and unsupported new constructions of the claim terms. This was expected, as Defendants own analysis demonstrates that Defendants infringe claims 5-7 of the '497 patent. Defendants' own documents admit that the Macronix '397 patent uses, *inter alia*, "virtual-groundlines" and "main-bitline[s]" as part of the means to access memory cells in the array, just as set forth in claims 5-7 of the asserted patents. Tr. Ex. 314 at "[Technical View]" 1, 2); *see also* Tr. 3/12/2014 at 96-97 (admissions of Mr. Stevenson, Defendants' expert during cross examination). The layouts for the accused standard and derivative array chips clearly show contacts that are staggered and offset. Exs. 332, 334. Moreover, Defendants admitted in both their verified filings with the Court and in response to Creative's requests to admit that the "standard memory array" and the "derivative memory array" are "substantially similar" to one another as Mr. Stevenson (Defendants' expert) conceded during cross examination on Tuesday March 12, 2014. Tr. 3/12/2014 at 93-95 (discussing Ex. 1071; (Ex. 22, Declaration of Ful-Long Ni submitted with summary judgment motion at p. 14)). Defendants also admitted that these designs used the same terminology ("virtual groundlines," "main bitline[s]," etc.) as used in the '497 patent to describe the same structure.

1    **B.     Defendants have failed to demonstrate that any claim of the '497**
2    **        patent is invalid.**
3          **1.      Defendants presented no evidence that claim 7 is anticipated.**
4          With respect to claim 7, Defendants presented no evidence whatsoever that claim
5    7 was anticipated by any piece (or alleged piece) of prior art. Defendants presented no
6    testimony with respect to anticipation by the '999 patent, the Ricoh flat cell, or the Oishi
7    foreign patent applications (Japanese Laid-Open Patent Publication H02-112278 or U.K.
8    Pub. No. 2,224,162). Thus, a judgment as a matter of law in favor of Creative is
9    required. *Davis v. Progressive Cas. Ins. Co*., 2007 U.S. App. LEXIS 4180, 220 Fed.
10   Appx. 708, 711 (9th Cir. 2007) (upholding district court's JMOL precluding plaintiff
11   from seeking punitive damages "[b]ecause Davis presented no evidence of" essential
12   element of punitive damages claim); *accord Applied Med. Res. Corp. v. United States
13   Surgical Corp*., 549 F. Supp. 2d 1208, 1210 (C.D. Cal. 2008) (finding that it is
14   appropriate to grant JMOL where is "a complete absence of evidence" to support a jury
15   verdict.)
16         **2.      Defendants presented no evidence that the Japanese Laid-Open**
17         **        Patent Publication H02-112278 or U.K. Pub. No. 2,224,162**
18         **        invalidated any claim of the '497 patent**
19         Defendants presented no evidence that the asserted foreign applications were
20   prior art (Japanese Laid-Open Patent Publication H02-112278 or U.K. Pub. No.
21   2,224,162). Defendants' expert did not address either publication in his claim-element-
22   by-claim-element analysis. Defendants' expert (Dr. Stevenson) merely provided his
23   unsupported assertion that his analysis of the Ricoh Flat Cell and/or the '999 patent also
24   applied to the Japanese Laid-Open Patent Publication H02-112278 or U.K. Pub. No.
25   2,224,162. This testimony was insufficient as a matter of law to establish anticipation.
26   *See* N.D. Cal. Model Patent Instr. No. 4.3a1; 35 U.S.C. § 102. Moreover, to the extent
27   that Dr. Stevenson's analysis of the '999 patent was asserted to apply to Japanese Laid-
28   Open Patent Publication H02-112278 or U.K. Pub. No. 2,224,162, it is inadequate as a

matter of law for the reasons stated above. Defendants' claim that Japanese Laid-Open Patent Publication H02-112278 or U.K. Pub. No. 2,224,162 anticipate claims 5-7 and 12 of the '497 patent should not be presented to the jury. Judgment as a matter of law should be entered in Plaintiff's favor.

### 3.     Defendants have failed to prove anticipation of claims 5-6 and 12.

Defendants have unequivocally failed to meet their burden of demonstrating that the alleged prior art references teach each and every limitation of the claims of the '497 patent. Indeed, no reasonable jury could conclude that any claim of the '497 patent is anticipated under any portion of 35 U.S.C. § 102. This issue, therefore, should not be submitted to the jury.

The testimony of Mr. Wilson is unequivocal and irrefutable with respect to the Defendants' remaining anticipation arguments. First, Mr. Wilson demonstrated unequivocally that the '999 patent does not disclose "said addressed memory cell being coupled in series circuit with said main bit line and said virtual ground line to define a transmission path in said block, so that the length of the transmission path to said addressed memory cell having a length always approximately equal to the length of said addressed block." Tr. 3/5/2014 Vol. 1 at 54:16 to 55:22. As Mr. Wilson testified, the "transmission path" element in Claim 5 requires an implementation using a staggered contact layout. This claim language also indicates that claim 5 is directed to the Figure 9 embodiment of the '497 patent and not its other embodiments. *Id*.; '497 patent at Fig. 9.

Dr. Stevenson failed to address the Figure 9 embodiment, which is the embodiment of claim 5. Dr. Stevenson limited his invalidity analysis to the "Figure 7" of the embodiment of the '497 patent. Dr. Stevenson did not address (much less refute) Mr. Wilson's testimony that the Figure 7 embodiment included transmission paths shorter than the length of the block, and thus claim 5 could not be directed to Figure 7. In fact, Dr. Stevenson did not mention Figure 9 (the embodiment of claims 5-7 and 12)

once during his direct examination and provided no comparison of the alleged prior art to the Figure 9 embodiment at all.

As claim 6 depends from claim 5, it also cannot be anticipated by the '999 patent. Moreover, Defendants failed to provide evidence through Mr. Stevenson or otherwise that would lead a reasonable jury to conclude that the '999 patent anticipates the additional limitations of claim 6.

Claim 12 is also not disclosed by the '999 patent and no reasonable jury could conclude otherwise based on the presentation of evidence. The '999 patent lacks a disclosure as to "addressing a selected one of said addressable memory cells requires transmission of a signal on a path in said addressed block including at least one of said diffusion bit lines having a length always approximately equal to the length of said addressed block." As with claim 5, Dr. Stevenson did not address this requirement of the claimed invention or address (much less refute) Mr. Wilson's testimony regarding it. Claim 12 also requires columns that are not disclosed in the '999 patent.

Defendants also failed to establish that the '999 patent and Ricoh Flat Cell anticipated claims 5, 6 and 12 for a second reason. All asserted claims require "first means" and "second means" at the "opposite ends" of the addressed block. '497 patent at col. 39, ll. 15-17; *id.* at col. 41, ll. 10-14. On cross examination, Defendants' expert, Dr. Stevenson, conceded that alleged "first" and "second" means were on the same side in the '999 patent's "block." The '999 patent defines its "memory cell" with a box denoted with the letter "A" in, *e.g.*, Figures 1 and 3. *See* U.S. Patent No. 4,990,999 at Figs. 1 & 3; *id.* at col. 2, l. 54. On cross examination, Dr. Stevenson conceded that the memory cell was a block. *See, e.g.*, Tr. 03/12/14, Vol. 1 at 85. He further conceded that the "first means" and "second means" at the "opposite ends" of the addressed block. *See id.* at 85-86; '497 patent at col. 39, ll. 15-17; *id.* at col. 41, ll. 10-14. The Ricoh Flat Cell has the same deficiency. Consequently, because the '999 Patent and the Ricoh Flat cell both lack "first means" and "second means" at the "opposite ends" of the addressed block, they cannot anticipate claims 5, 6 and 12.

For the same reasons as set forth above, as testified to by Mr. Wilson, the Ricoh Flat Cell does not disclose each of the elements of asserted claims 5-6, and 12. Defendants have failed to present any evidence from which a reasonable jury could conclude otherwise.

### 4. Defendants submitted no evidence on the issue of obviousness.

To establish that any asserted claim of the '497 patent is invalid as obvious over the prior art, Defendants must show by clear and convincing evidence that the claimed invention would have been obvious to a person of ordinary skill in the art at the time the invention was made. In making this determination, the following factors must be considered: (1) The scope and content of the prior art relied upon by the Defendants; (2) the difference or differences, if any, between each claim of the '497 patent that the Defendants contends is obvious and the prior art; (3) the level of ordinary skill in the art at the time the invention of the '497 patent was made; and (4) additional considerations, if any, that indicate that the invention was obvious or not obvious. *See* AIPLA Model Patent Jury Instructions, Instruction 7; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 405 and 421 (2007); *Graham v. John Deere Co.,* 383 U.S. 1, 17-18 (1966).

Defendants failed to prevent any evidence of obviousness of any asserted claim or even address obviousness with their expert, Dr. Stevenson. This claim, therefore, should not be submitted to the jury.

### 5. Defendants submitted no evidence with respect to their Section 112 claims.

To prove its enablement defense, Defendants must prove by clear and convincing evidence that the patent at the time it was originally filed did not contain a description of the claimed invention that is sufficiently full and clear to enable a person of ordinary skill in the field at the time to make and use the full scope of the invention. 35 U.S.C. § 112. The patent may be enabling even though it does not expressly state some information if a person of ordinary skill in the field could make and use the invention without doing excessive experimentation. *See* N.D. Cal. Model Patent Instr. No. 4.2(b).

Defendants presented no evidence that the claims were not enabled. Again they did not even address with their expert, Dr. Stevenson.

Likewise, Defendants presented no evidence to establish that claim 12 is indefinite, namely, that it does not "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his or her invention" in its description of the "said virtual ground line" and "diffusion bit line." 35 U.S.C. § 112.

Having failed to present any evidence on Section 112 defenses, Defendants are not entitled to have this issue submitted to the jury.

**C.    Defendants have failed to demonstrate that any claim of the '497 patent is invalid for under 35 U.S.C. § 102(f) or for failing to name its correct inventors**

Once a patent issues, it is presumed that "its named inventors are the true and only inventors." *Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1379 (Fed. Cir. 2001). "The burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence." *Hess v. Advanced Cardiovascular Systems, Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997) (citation omitted). "[T]o be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention" *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed.Cir.1997). Defendants have also pursued an derivation claim under 35 U.S.C. § 102(f), asserting that claims 5, 6, and 12 are invalid based on the Ricoh Flat Cell and because they were derived from Mr. Oishi.

To demonstrate that another was an inventor, Defendants must prove, by clear and convincing evidence and corroboration, that another made a significant contribution to the conception of the asserted claims of the patent. Whether the contribution is significant is measured against the scope of the full invention. Conception is the mental formulation and disclosure by the inventor of a complete idea of the inventive solution. An inventive solution is considered to be a complete idea when disclosure of the idea

would enable anyone with ordinary skill in the pertinent art to reduce the invention to practice. Explaining to the actual inventors well-known concepts or the current state of the art does not make someone an inventor.

Likewise, merely helping with experimentation, by carrying out the inventor's instructions, does not make someone an inventor. *See* National Patent Jury Instructions 5.8; 35 U.S.C. § 102(f); 35 U.S.C. § 256; 35 U.S.C. § 282(a); *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d. 1330, 1338-39 (Fed. Cir. 2011) (§ 102(f) defense determined claim-by-claim); *Eli Lilly & Co. v. Aradigm*, 376 F.3d 1352, 1358-59 (Fed. Cir. 2004); *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1262-63 (Fed. Cir. 2002); *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985).

Moreover, the party asserting incorrect inventorship or derivation—here, Defendants—must corroborate their claim that an inventor is missing from the '497 patent. *Lacks Indus. v. McKechnie Vehicle Components USA, Inc.,* 322 F.3d 1335, 1350 (Fed. Cir. 2003) "Starting with the Supreme Court's decision in *The Barbed Wire Patent Case,* 143 U.S. 275, 36 L. Ed. 154, 12 S. Ct. 443, 1892 Dec. Comm'r Pat. 299 (1882), and ending with our recent decision in *Union Carbide v. Shell Oil Co.,* 308 F.3d 1167, 1189, 64 USPQ2d 1545, 1560 (Fed. Cir. 2002), courts have consistently required documentary corroboration of oral testimony by interested parties presented to invalidate a patent." *Id.*

## 1.    Because the Court lacks jurisdiction over each of the asserted claims with respect to the inventorship issue, no determination can be made by the jury with respect to those claims

This Court lacks subject matter jurisdiction over, and the jury is not entitled to consider, Defendants' Section 102(f) and inventorship defense. Defendants' Section 102(f) and inventorship defenses are based entirely Dr. Stevenson's analysis of the

9

Figure 7 embodiment. As no asserted claim is directed to the Figure 7 embodiment, the Court lacks jurisdiction to hear this argument. *See Jervis B. Webb Co. v. So. Sys., Inc.,* 742 F.2d 1388, 1399 (Fed.Cir.1984) (in patent cases, the existence of a "case or controversy must be evaluated on a claim-by-claim basis.").

> **2.      No evidence of inventorship or derivation was presented based on any asserted contribution other than based on the Ricoh Flat Cell**

Defendant presented no evidence of derivation under Section 102(f) or of improper inventorship on any basis other than the "Ricoh Flat Cell." Derivation and inventorship must be determined based on an analysis of the claims. *See Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1267-68 (Fed. Cir. 1985); *Palmer v. Orthokinetics, Inc.*, 611 F.2d 316, 322 (9th Cir. 1980); *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d. 1330, 1338-39 (Fed. Cir. 2011) (addressing Section 102(f) defense claim-by-claim) Defendants only purported to analyze the claims based on the "Ricoh Flat Cell." Consequently, judgment as a matter of law should be entered in Plaintiff's favor on all of Defendants' derivation and improper inventorship claims other than their Ricoh Flat Cell claim.

> **3.      No evidence of inventorship was presented as to Claim 7**

Additionally, an improper inventorship and invalidity claim under Section 102(f) is treated the exact same way as an invalidity claim under the other parts of Sections 102—***on a patent-claim-by-patent-claim*** basis. For example, in *Rosco, Inc. v. Mirror Lite Co.,* the Federal Circuit remanded and instructed: "the district court **should analyze the validity of each claim** and should consider validity under sections 102(a), 102(f), and 103." 304 F.3d 1373, 1382 (Fed. Cir. 2002) (emphasis added). In its subsequent decision in *Rosco, Inc. v. Mirror Lite Co.* II, the Federal Circuit confirmed that invalidity defenses under § 102, including subpart (f), apply on a claim-by-claim basis: "In particular, we directed the district court to address [ ] whether Rosco has shown by clear and convincing evidence that Mirror Lite's *'984 patent* is invalid under 35 U.S.C.

10

§§ 102(a), **102(f),** and 103, **considering each claim separately** ….” *,* 120 Fed. Appx. 832, 833 (Fed. Cir. 2005) (emphasis added). Similarly, in *Cordance*, the Federal Circuit analyzed the § 102(f) invalidity defense on a claim-by-claim basis. 658 F.3d. at 1337-39. In that case, Cordance filed a JMOL for relief that claims 1-3, 5, and 7-9 were not invalid under §102(f). *Id*. at 1337. The district court granted the § 102(f) JMOL motion for all claims *except* 2 and 9. *Id*. at 1338. The Federal Circuit upheld the jury's finding that claims 2 and 9 were invalid for incorrect inventorship under § 102(f) while finding that the remaining claims of the patent were valid. *Id*. Here, as in *Cordance,* the jury is not entitled to consider any inventorship claim based on anything other than the asserted claims.

For the reasons set forth above with regard to the Ricoh Flat cell, Defendants have failed to establish their Section 102(f) derivation claim as to any asserted claim.  A derivation claim is a claim of anticipation under Section 102, and Defendants have failed to demonstrate that the Ricoh Flat Cell anticipates each and every element of any asserted claim.

Defendants have also failed to establish their incorrect inventorship claim as to any of the asserted claims. Incorrect inventorship requires a substantial contribution to a claim when measured in view of the entire claim. "[T]o be a joint inventor, an individual must make a contribution to the conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention" *Fina Oil & Chem. Co. v. Ewen,* 123 F.3d 1466, 1473 (Fed.Cir.1997). Dr. Stevenson presented no substantial evidence of a contribution to a claim, as set forth herein. To the contrary, the evidence of record indicates that the Ricoh Flat Cell and Mr. Oishi's work was not operable until Mr. Komarek created his designs.

Moreover, Defendants have failed to corroborate either their derivation or incorrect inventorship claim.  All of Defendants' invalidity claims require corroboration. *Finnigan Corp. v. US Intn. Tr. Com*., 180 F.3d 1354 (Fed. Cir. 1999). There is no corroborating evidence that Mr. Oishi made a substantial contribution to the claims; to

the contrary, Mr. Oishi testified by declaration read into the record that he did not consider himself to be an inventor of the '497 patent.

Finally, Defendants have presented no evidence that claim 7 is invalid in view of derivation or incorrect inventorship for an additional reason. Dr. Stevenson performed no specific analysis of claim 7. Thus, Defendants are not entitled to have this issue be submitted to the jury for consideration for this reason as well.

### 4.   Defendants' evidence concerned *un*asserted patent claims and cannot be a basis to invalidate the asserted claims.

The only evidence presented by Defendants to support an inventorship claim was based on Figure 7 of the '497 patent. There was no evidence presented, however, from which a reasonable jury could conclude that Figure 7 describes an embodiment of any asserted claim. In fact, Defendants' own testimony at trial established that Figure 9, which is an embodiment of the asserted claims of the '497 patent, is an embodiment of a completely different chip with completely different circuitry. Tr. 3/5/2014 Vol. 1 at 46:15-57:24.Therefore, the evidence presented is insufficient to permit this issue to be submitted to the jury.

### 5.   There is no evidence from which a jury could conclude that Mr. Oishi made a "significant" contribution to any claim.

To reiterate, there is no evidence in the record from which a jury could conclude that there is doubt with respect to inventorship. Indeed, the only evidence is that Mr. Oishi himself believes that he is not an inventor of the '497 patent. Two declarations from the allegedly omitted inventor (Mr. Oishi) were read into the record stating that Mr. Oishi did not claim to be an inventor of the '497 patent. Tr. 3/11/2014 Vol. 1 at 49:2 to 57:24. Thus, no reasonable jury could conclude otherwise. There was also no evidence presented to corroborate Defendants' theory that Mr. Oishi contributed to any claim element.

1

2

**D.      If the inventorship of any claim held to be incorrect, Defendants have failed to demonstrate that the patent should not be corrected as set forth in 35 U.S.C. § 256**

3

4      "Incorrect inventorship," however, "is a technical defect in a patent that may be

5   easily curable." *Winbond Electronics Corp. v. International Trade Com'n*, 262 F.3d

6   1363, 1371 (Fed. Cir. 2001) (citation omitted). If a Defendants prove incorrect

7   inventorship, the general rule is that the Court does not hold the entire '497 patent

8   invalid. Rather, the Court may invalidate the claims affected by the incorrect

9   inventorship claim, effectively striking them from the patent. 35 U.S.C. § 282(a)

10  (invalidity of any one claim does not affect others); *accord Cordance Corp. v.

11  Amazon.com, Inc.*, 658 F.3d 1330, 1338-39 (Fed. Cir. 2011) (incorrect inventorship

12  applies claim-by-claim). Alternatively, upon request from Creative, the Court can order

13  that inventorship be corrected. *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1301

14  (Fed.Cir. 2002) (citing 35 U.S.C. § 256(a) (2002)).[1]

15      No reasonable jury could find for Defendants that incorrect inventorship has been

16  established. In the event the Court concludes otherwise, however, Defendants have

17  failed to present any evidence of "deceptive intention" that would preclude the patent

18  from simply being corrected as set forth in 35 U.S.C. § 256. To the contrary, two

19  declarations from the allegedly omitted inventor (Mr. Oishi) were read into the record

20  stating that Mr. Oishi did not claim to be an inventor of the '497 patent. The evidence of

21  record also demonstrates that Mr. Oishi's employer—Ricoh, the '497 patent's exclusive

22  licensee—knew that the '497 patent named Mr. Komarek as its inventor and made no

23  objection. Tr. 3/6/2014 Vol. 2 at 35:6 to 36:13, 49:3 to 54:12, 69:12-15; Tr. 3/11/2014

24  Vol. 1 at 49:2 to 57:24; Exs. 33-39. Furthermore, Defendants have withdrawn and

25  dismissed with prejudice their inequitable conduct claim based on the theory that Mr.

26  Komarek acted with deceptive intent.

27  ────────────────

28      [1] The America Invents Act modified this provision of the Patent Act but it does not affect the issues raised in this motion. *See* 35U.S.C. § 256(a) (2011).

No reasonable jury could find an error in inventorship. To the extent that any claim of incorrect inventorship is sustained and affects the claims asserted in this lawsuit, however, there is no evidence of any deceptive intent by Mr. Komarek, Mr. Oishi, or anyone associated with the Plaintiff. Consequently, any asserted error in naming the correct inventors of the '497 patent can and should be corrected.

### E. The Law of Patent Marking Does Not Limit Patent Damages in this Lawsuit.

Defendants have failed to establish their marking defense. Section 287(a) is triggered only if a patentee, or a person acting for or under the patentee, actually offers for sale or sells a product that embodies the claimed invention of the asserted patent in the United States. 35 U.S.C. § 287(a); *Texas Digital Sys., Inc. v.Telegenix, Ind.*, 308 F.3d 1193, 1219-20 (Fed. Cir. 2002) (citing *Wine Railway Appliance Co. v. Enterprise Railway Equipment Co.,* 297 U.S. 387, 393 (1936)). Marking does not apply where no patented article is sold by, for, or under a patentee in the United States. *Id.* Moreover, even where unmarked patented articles are sold in the United States in violation of the marking statute, a patentee can still collect damages once it gives notice to Defendants of their infringements. 35 U.S.C. § 287(a).

There are multiple independent grounds to grant judgment as a matter of law in Plaintiff's favor on this point.

*First*, there is no evidence of a sale under the '497 patent that would trigger an obligation to mark. The obligation to mark can only be triggered by the patentee or persons acting for or under the patentee. 35 U.S.C. § 287(a). Plaintiff never made, offered for sale, or sold a product embodying the '497 patent in the United States. Tr. 3/6/2014 at 48:19-20. Plaintiff's sole (and exclusive) licensee, Ricoh Company, Ltd., never made, offered for sale, or sold a product embodying the '497 patent in the United States. Tr. 3/6/2014 at 50:20-51:3. Ricoh was Plaintiff's only licensee under the '497 patent (express or implied) and Ricoh held an exclusive license through 2006. *See, e.g,* Tr. Ex. 33. Thus, the marking statute was never triggered.

**Second**, Defendants' alleged sale activity cannot, as a matter of law, trigger the marking statute.  There is no evidence that any Defendant was a licensee of either Ricoh or CIS (express or implied).  To the extent Defendants allege that Ricoh sold ROM chips to Nintendo Co., Ltd. in Japan, these foreign sales were not (and could not be) licensed under a U.S. patent (*e.g.,* the '497 patent).  Defendants have not produced (or even alleged the existence of) any agreement or understanding with Ricoh or CIS that would grant them an express or implied license under the '497 patent from Ricoh (the exclusive licensee) or CIS.  Moreover, foreign sales cannot exhaust a U.S. patent or provide an implied license to practice a U.S. patent.  "United States patent rights are not exhausted by products of foreign provenance." *Ninestar Tech. Co. v. ITC,* 667 F.3d 1373, 1378 (Fed.Cir. 2012) (citing and discussing *Fujifilm Corp. v. Benun,* 605 F.3d 1366 (Fed.Cir. 2010); *Fuji Photo Film Co., Ltd. v. Benun,* 463 F.3d 1252 (Fed.Cir. 2006); *Jazz Photo Corp. v. ITC,* 264 F.3d 1094 (Fed.Cir. 2001)).

**Third**, Defendants have a fundamental proof problem with the allegation that they, themselves, triggered the obligation to mark based on alleged sales of Nintendo game products in the United States containing a Ricoh ROM chip. The rule in the Central District of California is that Defendants bear the initial burden of proving an obligation to mark. *See, e.g., In re Katz Interactive Call Processing Litigation*, 821 F.Supp. 2d 1135, 1158-59 (C.D. Cal. 2011) (noting split in authority at the district court level but following precedent in the Central District of California); *Unova Inc. v. Hewlett-Packard*, 2006 WL 5434534, *1 (C.D. Cal. 2006); *accord In re Katz Interactive Call Processing Patent Litigation*, No. 07-ML-01816-RGK (FFMx), 2009 WL 8635995, *3-*4 (C.D. Cal. Aug. 3, 2009).  This is also the rule in many courts outside the Central District of California. *See, e.g., Oracle America, Inc. v. Google Inc.,* 2011 WL 5576228, *2–*3 (N.D. Cal. 2011) (denying motion for summary judgment); *Broadcom Corp. v. Agere Sys. Inc.*, No. 04-cv-2416, 2004 WL 2009320, at *4 & n.5 (E.D. Pa. Sept. 8, 2004) (refusing to limit patentee's claim for damages because defendant "failed to prove that the ... products [plaintiff] sold ... were 'patented articles' within the meaning of the

[patents-in-suit]"); *Laitram Corp. v. Hewlett-Packard Co.,* 806 F. Supp. 1294, 1296-97 (E.D.La. 1992).   No evidence was introduced to show any triggering U.S. sale.  Among other things:

- There is no evidence that any relevant ROM chips were made in the United States by anyone (including Defendants).
- There is no evidence that Nintendo Co. Ltd. (Japan) ever sold or offered for sale any product in the United States. Tr. 3/10/2014 at 121:25 to 122:3, 126:3-15. ;
- There is no evidence that Nintendo of America ever sold or offered for sale any Ricoh ROM chip in the United States.
- Moreover, Nintendo of America's witness testified that it did not even know of Plaintiff and had no agreement or relationship with Plaintiff. Nintendo of America could not possibly be acting "for or under" Plaintiff. 35 U.S.C. § 287(a).

*Fourth*, there is no evidence from Defendants' documents (or anywhere else) that (1) even a single Ricoh ROM chip actually made it into the United States (as opposed to Canada) or was sold or offered for sale; or, (2) any of the ROM chips made it into the United States after the '497 patent issued in August, 1993, when any marking obligation might arise. *See* 35 U.S.C. § 287(a).  The document offered by Defendants to establish that Ricoh ROM chips may have been sold in the United States only reflects alleged imports after 1991 and included alleged imports to Canada.   Ex. 756; Tr. 3/7/2014 Vol. 2 at 126:1-5; Tr. 3/10/2014 at 90:7-8. Mr. Takeda's vague belief that Exhibit 756 indicates that ROM chips may have been imported into the United States or Canada is insufficient as a matter of law to trigger an obligation to mark. *See, e.g., Oracle America, Inc.,* 2011 WL 5576228, *2–*3.

*Fifth*, no document or testimony established that any of these alleged imports of Ricoh ROM chips embodied the '497 patent.  To the contrary, Mr. Takeda testified that all ROM chips, including Ricoh ROM chips, were a "black box" to Nintendo. Tr.

3/10/2014 at 66:8-25.  Thus, there is no evidence that any Ricoh ROM sold to Nintendo chip was a "patented article" within the meaning of 35 U.S.C. § 287(a). *See, e.g., Oracle America, Inc.,* 2011 WL 5576228, *2.

**Sixth**, the evidence that demonstrates that Ricoh sold Nintendo of Japan several *different* ROM chips that did not practice the '497 patent. Ex. 527. These included the Ricoh "flat cell" design and ROM chips that may have embodied any of the other *fifteen* patents that Plaintiff licensed to Ricoh. Ex. 877 at CIS00028790.  Testimony from Plaintiff that it "guess[ed]" that some ROM chips made by Ricoh under its Agreement with Plaintiff may have found their way into the United States is insufficient as a matter of law to establish an obligation to mark, as there is no testimony or other evidence that any ROM chip actually embodied the '497 patent. 12/1/10 Komarek Deposition at 32:07-33:14; 2/8/2012 Deposition of Shiro Fujioka at 67:21-68:4; *see, e.g., Oracle America, Inc.,* 2011 WL 5576228, *2–*3.

**Seventh**, there is no evidence that anyone (including Ricoh or any defendant) made, offered for sale or sold any "patented article" within the meaning of the marking statute.  Nintendo of America allegedly offered only video game systems and games in the United States that may contain one or more ROM chips. There is no evidence that Nintendo of America (or any other defendant) ever offered for sale a ROM chip, much less one that practiced the '497 patent.

**Eighth,** even if Defendants' tortuous theory were accepted, Defendants do not qualify for the protections of 35 U.S.C. § 287(a). Under Defendants' theory, they are not "the public" but rather the entities who allegedly sold patented articles in the United States. Defendants thus contend that they themselves were in privity with the Plaintiff and had the obligation to mark.  *Id.* ("Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice **to the public** that the same is patented"). As privities of CIS, Defendants cannot avail themselves of the protections of the patent marking statute.

*Ninth,* any failure to mark cannot extend beyond the time that products were allegedly made, sold, or offered for sale in the United States. The undisputed evidence is that Ricoh stopped manufacturing any ROM chips under its agreement with Plaintiff no later than 1997 (the date of the last royalty payment). 12/1/2010 Deposition of James Komarek Tr. 99:4-6, Ex. 877.  This cessation occurred at least seven years before the introduction of the accused ROM chips in the Nintendo products (Macronix ROMs that are used in the Wii were introduced in 2006 and DS were introduced in 2004)). Marking does not apply. 35 U.S.C. §287(a); *WiAV Solutions LLC v. Motorola, Inc.* 2010 WL 3199706, *4-*5 (E.D. Va. 2010)

*Tenth*, even if marking was triggered, Defendants received notice of infringement.  Defendants have asserted as much at trial as part of their estoppel and laches defenses, and are barred and estopped from asserting otherwise.  *See also* Summary judgment filings.

### F.   Defendants' damages testimony is legally unsupportable

Defendants' damages theory is legally unsupported. Defendants' expert, Mr. Hampton, acknowledged that his testimony was based exclusively on his report, which is riddled with legal error.  *See* Trial Testimony on 3/13/204 [presently unavailable]. Mr. Hampton's report states that "CIS may have negotiated with Macronix and Nintendo, but would have entered into a license agreement for the '497 Patent with Macronix" and not Nintendo. Hampton Report, at ¶ 41; *see* Trial Testimony on 3/13/204 [presently unavailable]. He further assumed that the Macronix license would be "restricted to the United States (not worldwide), without the right to sublicense the patent." *Id.* at ¶ 77; *see* Trial Testimony on 3/13/204 [presently unavailable].  Using these assumptions, Hampton concludes that Macronix would pay a reasonable royalty of only 0.5% for a restricted U.S.-only license. *Id.* at ¶ 18; *see* Trial Testimony on 3/13/204 [presently unavailable].

It was legal error for Mr. Hampton to base his 0.5% royalty rate on a license that excluded Nintendo. Mr. Hampton asserts that a license granted to a manufacturer (like

Macronix) ordinarily extends to a purchaser (like Nintendo). This doctrine, known as the "first sale" doctrine, does not apply where the sale occurs outside of the United States. Rather, the Federal Circuit has repeatedly held that "United States patent rights are not exhausted by products of foreign provenance." *Ninestar Tech. Co. v. ITC,* 667 F.3d 1373, 1378 (Fed.Cir. 2012) ("*Quanta Computer, Inc. v. LG Electronics, Inc.* did not eliminate the first sale rule's territoriality requirement." ) (citing and discussing *Fujifilm Corp. v. Benun,* 605 F.3d 1366 (Fed.Cir. 2010)); *Fuji Photo Film Co., Ltd. v. Benun,* 463 F.3d 1252 (Fed.Cir. 2006); *Jazz Photo Corp. v. ITC,* 264 F.3d 1094 (Fed.Cir. 2001)). Mr. Hampton cannot rely on the doctrine of patent exhaustion to extend his presumed U.S.-only license to Macronix for sales outside of the U.S to Nintendo. *Id.*

In excluding Nintendo from the "hypothetical negotiation" license, Mr. Hampton failed to account for its infringement. Moreover, because a license to Macronix does not extend to Nintendo under the law, Mr. Hampton's analysis was contrary to the legal presumption that he had to assume that the '497 patent was valid and infringed by Nintendo as part of his reasonable royalty analysis. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).

Mr. Hampton further erred in placing improper weight on a 1988 Development Agreement between Ricoh Co. Ltd. ("Ricoh") and Creative under Georgia-Pacific Factor No. 1. Ex. Tr. Ex. 33. The 1988 Development Agreement was executed about 18 months before the first application for the '497 patent was filed in 1990 and six years before the hypothetical negotiation between Creative and Defendants in 1994. *Id.* at ¶ 4. At the time the Development Agreement was executed, there was no way for either Ricoh to know whether any patent would issue or what the value of that patent might be. Indeed, the 1988 Development Agreement required Ricoh to pay Creative a royalty (varying between 1-2% of sales) even if *no* patent issued. *Id.* at ¶ 5.4. Moreover, this Royalty was due to Creative even where Ricoh merely sold a chip to another Ricoh division. *Id.* at ¶ 5.9. The 1988 Development Agreement further required Ricoh to pay Creative additional compensation for the technology that Ricoh was licensing, including

19

development fees, CAD fees, paying to file and prosecute any patent applications, paying for Ricoh personnel to be on-site at Creative's offices, and providing a myriad of other benefits to Creative that reflect the total compensation package under the Development Agreement to Creative. *See, e.g., id.* at ¶¶ 2.1, 2.1.1, 5.1, 5.2, and 9.1.

Mr. Hampton relied on the percentage royalty rate in the Agreement to the exclusion of all other provisions and only Mr. Hampton held that the Agreement had a ***determinative*** impact on the royalty rate (*i.e.*, as capping the maximum royalty rate at 0.5%). This was error. *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372-73 (Fed. Cir. 2008) (reversing trial court's damages award because it narrowly focused on the royalty rate in a patent license to the exclusion of other provisions and context). Hampton ignores this context for the 1988 Development Agreement and mechanically assumes that it caps the maximum reasonable royalty rate for the '497 patent under Georgia-Pacific Factor No. 1 at less than 1 %. Hampton Report at ¶¶ 13, 64-66. This assumption, too, is contrary to law. "By its terms, [Georgia-Pacitic Factor No. 1] considers only past and present licenses to the ***actual patent*** and the ***actual claims*** in litigation." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869-70 (Fed. Cir. 2010) (emphasis added). At the time the 1988 Development Agreement was executed, however, the application for the '497 patent had not even been filed. There was no guarantee that any patent would be filed or whether any patent would issue at the time the 1988 Development Agreement was executed and no way to determine what value, if any, the issued claims of the '497 patent might have. Consequently, in order for the 1988 Development Agreement to cap the reasonable royalty rate under the '497 patent claims, Mr. Hampton was required to link the various provisions of the 1988 Defendant Agreement to the claims that actually issued in 1993. *Id.* (rejecting expert analysis that did not tie his analysis of license agreements to the actual patent claims at issue in the lawsuit).

Moreover, Mr. Hampton makes no effort to link the 1988 Development Agreement to the '497 patent claims ***as issued***. Hampton Report at ¶¶ 44-66. The 1988

Development Agreement indicates Ricoh was willing to pay licensing fees and substantial other compensation to Creative—including paying all patent application costs—merely for the *possibility* that Creative would be able to create a valuable and patentable ROM chip. Ex. 33 at ¶¶ 2.1, 2.1.1, 5.1, 5.2, 5.4, 5.9 and 9.1. Mr. Hampton improperly discounts these facts. Hampton erred as a matter of law in assuming that the 1988 Development Agreement caps the maximum royalty rate at less than 1% under Georgia-Pacific Factor No. 1. Because Mr. Hampton improperly places determinative weight on the 1988 Development Agreement under Georgia-Pacific Factor No. 1, his analysis is legally improper. *ResQNet.com*, 594 F.3d at 869-71.

## G. It Was Legally Improper To Exclude Mr. Pellegrino's Testimony Regarding Design License Fees And Design Fees

As noted, it is legal error to prevent consideration of all terms of the 1994 Development Agreement.  Mr. Pellegrino properly considered those terms.  As reflected in multiple filings in the record, the Court improperly excluded this testimony of Mr. Pellegrino.

## III. CONCLUSION

Judgment as a matter of law should be found in favor of Plaintiff.

Dated: March 13, 2014                     Respectfully submitted:

                                          **BARNES & THORNBURG LLP**

                                          By: */s/Todd G. Vare*
                                                   TODD G. VARE
                                          Attorneys for Plaintiff Creative Integrated
                                          Systems, Inc.