FILED
CLERK, U.S. DISTRICT COURT

MAR 19 2014

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREATIVE INTEGRATED SYSTEMS, INC.,<br><br>    Plaintiff,<br><br>   v.<br><br>NINTENDO OF AMERICA INC.;<br>NINTENDO CO., LTD.; AND<br>MACRONIX INTERNATIONAL CO.,<br>LTD.,<br><br>    Defendants. | No.  CV 10-2735 PA (VBKx)<br><br>JURY INSTRUCTIONS |

Members of the Jury:  Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you as to the law of the case.

A copy of these instructions will be sent with you to the jury room when you deliberate.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  You should not be influenced by any person's race, color, religion, national ancestry, or sex.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

1        During this trial, I have asked a witness a question myself.  Do not assume that

2  because I asked questions I hold any opinion on the matters I asked about, or on what the

3  outcome of the case should be.

1        In this case, the parties are corporations.  All parties are equal before the law.  A
2   corporation is entitled to the same fair consideration that you would give any individual
3   person.

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits which are received into evidence; and

3.      any facts to which the lawyers have agreed.

You may consider statements given by the parties or their officers before trial as evidence of the truth of what they said in the earlier statements, as well as in deciding what weight to give their testimony.

With respect to other witnesses, the law is different. If you decide that, before the trial, one of these witnesses made a statement not under oath or acted in a manner that is inconsistent with his testimony here in court, you may consider the earlier statement or conduct only in deciding whether his testimony here in court was true and what weight to give his testimony here in court.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I have given a limiting instruction, you must follow it.

4.      Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

1    Some evidence may be admitted for a limited purpose only.  When I instructed you

2    that an item of evidence has been admitted for a limited purpose, you must consider it only

3    for that limited purpose and for no other.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Languages other than English were used during this trial.

2   The evidence to be considered by you is only that provided through official

3   interpreters and translators.  Although some of you may know the foreign languages used, it

4   is important that all jurors consider the same evidence.  Therefore, you must accept the

5   English translation.  You must disregard any different meaning.

1    You must not make any assumptions about a witness or a party based solely upon the

2    use of an interpreter to assist that witness or party.

1    Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact,
2    such as testimony by a witness about what that witness personally saw or heard or did.
3    Circumstantial evidence is proof of one or more facts from which you could find another
4    fact.  You should consider both kinds of evidence.  The law makes no distinction between
5    the weight to be given to either direct or circumstantial evidence.  It is for you to decide how
6    much weight to give to any evidence.

7    By way of example, if you wake up in the morning and see that the sidewalk is wet,
8    you may find from that fact that it rained during the night.  However, other evidence, such as
9    a turned on garden hose, may provide a different explanation for the presence of water on
10   the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial
11   evidence, you must consider all the evidence in the light of reason, experience, and common
12   sense.

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1          Certain diagrams, charts and summaries have been shown to you.  Those diagrams

2    charts and summaries are used for convenience and to help explain the facts of the case.

3    They are not themselves evidence or proof of any facts.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Certain charts and summaries have been received into evidence to illustrate

2    information brought out in the trial.  Charts and summaries are only as good as the

3    underlying evidence that supports them.  You should, therefore, give them only such weight

4    as you think the underlying evidence deserves.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       A deposition is the sworn testimony of a witness taken before trial.  The witness is

2   placed under oath to tell the truth and lawyers for each party may ask questions.  The

3   questions and answers are recorded.

4       During the trial, certain testimony was presented to you by the reading of depositions

5   and video.  You should consider deposition testimony, presented to you in court in lieu of

6   live testimony, insofar as possible, in the same way as if the witness had been present to

7   testify.

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

1     In determining whether any fact has been proved, you should consider all of the

2  evidence bearing on the question regardless of who introduced it.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists.  In law, we call this "inference."  A jury is allowed to make reasonable inferences.  Any inference you make must be reasonable and must be based on the evidence in the case.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness's memory;

3.    the witness's manner while testifying;

4.    the witness's interest in the outcome of the case and any bias or prejudice;

5.    whether other evidence contradicted the witness's testimony;

6.    the reasonableness of the witness's testimony in light of all the evidence; and

7.    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

1       Whether or not you took notes, you should rely on your own memory of the evidence.

2    Notes are only to assist your memory.  You should not be overly influenced by your notes or

3    those of your fellow jurors.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable.  This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

1     Any alleged delay alone in Plaintiff's decision to file this lawsuit is not relevant to the

2  issues that you have been asked to decide in this lawsuit. Any issues regarding the Plaintiff's

3  delay in filing suit are for the Court to decide. You should determine the issues before you

4  on their merits based on the evidence that you have seen and heard.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I will now summarize the issues that you must decide and for which I will provide instructions to guide your deliberations. You must decide the following three main issues:

1.    Whether Defendants infringe the Asserted Claims;

2.    Whether the Asserted Claims are invalid;

3.    What amount of damages, if any, Plaintiff has proven; and

4.    Whether the patent marking statute applies to Plaintiff and, if you find that it does, whether the marking statute limits Plaintiff's damages.

1    Before you decide whether Defendants have infringed the claims of the patent or

2  whether the claims are invalid, you will need to understand the patent claims. As I

3  mentioned, the patent claims are numbered sentences at the end of the patent that describes

4  the boundaries of the patent's protection. It is my job as judge to explain to you the meaning

5  of any language in the claims that need interpretation.

6    I have interpreted the meaning of some of the language in the patent claims involved

7  in this case. You must accept those interpretations as correct. My interpretation of the

8  language should not be taken as an indication that I have a view regarding the issues of

9  infringement and invalidity. The decisions regarding infringement and invalidity are yours

10 to make.

11    The asserted claims of the '497 patent are claims 5, 6, 7, and 12. I have provided you

12 a copy of these interpretations for you to take back to the jury room. You must accept those

13 interpretations as correct. My interpretation of the language should not be taken as an

14 indication that I have a view regarding the issues in this case. The decisions regarding

15 infringement and invalidity are yours to make.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CLAIM CONSTRUCTION INSTRUCTIONS AND HANDOUT

| Claim Term | Claim(s) | Definition |
|---|---|---|
| "said block having opposing ends at opposite ends of said length, said plurality of blocks being coupled together at their ends by metallization lines" | 5 | The plurality of blocks is directly or indirectly connected at their ends by metallization lines. |
| "said blocks being coupled together by metallization lines" | 12 | The plurality of blocks are directly or indirectly connected by metallization lines. |
| "first means for selectively coupling said at least one virtual ground line to one of said diffusion bit lines within each block"<br><br>"selectively coupling said virtual ground line to said diffusion bit line in an addressed one of said blocks by a first means" | 5<br><br><br><br>12 | The function of the first means is to selectively couple a diffusion bit line to a diffusion virtual ground line. With reference to Figure 7, the function of the "first means" is performed by control line CB and transistor 84 or control line CA and transistor 81. With reference to Figure 9, the function of the "first means" is performed by control line CA and transistor 101 or control line CA and transistor 102. |

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Claim Term | Claim(s) | Definition |
|---|---|---|
| "second means for selectively coupling said one diffusion bit line to said main bit line within each block"<br><br>"selectively coupling a selected one of said diffusion bit lines to said main bit line in said addressed block by a second means" | 5 | The function of the "second means" is to selectively couple a diffusion bit line to a diffusion main bit line. With reference to Figure 7, the function of the "second means" is performed by control line CA and transistor 82 or control line CB and transistor 83. With reference to Figure 9, the function of the "second means" is performed by control line CB and transistor 116 or control line CB and 118. |
| "transmission path"<br><br>"transmission of a signal on a path" | 5<br><br>12 | The path on which a signal is transmitted. |
| "said blocks . . . being selectively coupled to ground and a sense amplifier by said metallization line" | 12 | The blocks can be selected to be directly or indirectly connected to ground and a sense amplifier by metallization lines |
| "metallization line" | 5, 12 | A conductive line made of metal. |
| "said method comprising the steps of" | 12 | The method includes at least the two steps recited. |

1    I will now instruct you on the rules you must follow in deciding whether Plaintiff has

2  proven that Defendants have infringed one or more of the asserted claims of the '497 patent.

3  To prove infringement of any claim, Plaintiff must persuade you by a preponderance of

4  evidence that Defendants have infringed that claim.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    A patent's claims define what is covered by the patent. A product or method directly

2  infringes a patent if it is covered by at least one claim of the patent.

3    Deciding whether a claim has been directly infringed is a two-step process. The first

4  step is to decide the meaning of the patent claim. I have already made this decision, and I

5  have already instructed you as to the meaning of the asserted patent claims. The second step

6  is to decide whether Nintendo of America or Nintendo Co., Ltd. have made, used, sold,

7  offered for sale or imported within the United States a product or method covered by a claim

8  of the '497 patent. If it has, it infringes. You, the jury, make this decision.

9    With one exception, you must consider each of the asserted claims of the patent

10  individually, and decide whether Nintendo of America's or Nintendo Co., Ltd. products or

11  methods infringe that claim. The one exception to considering claims individually concerns

12  dependent claims. A dependent claim includes all of the requirements of a particular

13  independent claim, plus additional requirements of its own. As a result, if you find that an

14  independent claim is not infringed, you must also find that its dependent claims are not

15  infringed. On the other hand, if you find that an independent claim has been infringed, you

16  must still separately decide whether the additional requirements of its dependent claims have

17  also been infringed.

18    Whether or not Nintendo of America or Nintendo Co., Ltd. knew their products or

19  methods infringed or even knew of the patent does not matter in determining direct

20  infringement.

21    You should note, however, that what are called "means-plus-function" requirements

22  in a claim are subject to different rules for deciding direct infringement. These separate

23  rules apply to claims 5 and 12. I will describe these separate rules shortly.

24

25

26

27

28

To decide whether Nintendo of America or Nintendo Co., Ltd. products and methods literally infringe a claim of the '497 patent, you must compare that product and method with the patent claim and determine whether every requirement of the claim is included in that product and method.  If so, Nintendo of America's and Nintendo Co., Ltd. products and methods literally infringe that claim.  If, however, Nintendo of America's and Nintendo Co., Ltd. products and methods do does not have every requirement in the patent claim, Nintendo of America's and Nintendo Co., Ltd. products and methods do not literally infringe that claim.  You must decide literal infringement for each asserted claim separately.      If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim.  An open claim is infringed as long as every requirement in the claim is present in Nintendo of America's and Nintendo Co., Ltd. products and methods.  The fact that Nintendo of America's and Nintendo Co., Ltd. products and methods also includes other parts or steps will not avoid infringement, as long as it has every requirement in the patent claim.

1   I will now describe the separate rules that apply to "means-plus-function"

2   requirements that are used in some claims.  Claims 5 and 12 in the '497 patent contain

3   "means-plus-function" requirements.  A means-plus-function requirement only covers the

4   specific structures disclosed in a patent specification for performing the claimed function

5   and the equivalents of those specific structures that perform the claimed function.  A

6   means-plus-function requirement does not cover all possible structures that could be used to

7   perform the claimed function.

8   As an example, the term "means for processing data" might be understood to

9   encompass a variety of different ways of making a calculation, including not only a

10   computer or calculator but a pencil and paper or even the human brain.  But because the

11   phrase is a means-plus-function requirement, we interpret that phrase not to cover every

12   possible means for processing data, but instead to cover the actual means disclosed in the

13   patent for processing data and other means that are equivalent to it.

14   For purposes of this trial, I have interpreted each means-plus-function requirement

15   for you and identified the structure in the patent specification that corresponds to these

16   means-plus-function requirements.  Specifically, I have determined that:

17   1.   The function of the first means is to selectively couple a diffusion bit line to a

18   diffusion virtual ground line.  With reference to Figure 7, the function of the "first means" is

19   performed by control line CB and transistor 84 or control line CA and transistor 81.  With

20   reference to Figure 9, the function of the "first means" is performed by control line CA and

21   transistor 101 or control line CA and transistor 102.

22   2.   The function of the "second means" is to selectively couple a diffusion bit line

23   to a diffusion main bit line.  With reference to Figure 7, the function of the "second means"

24   is performed by control line CA and transistor 82 or control line CB and transistor 83.  With

25   reference to Figure 9, the function of the "second means" is performed by control line CB

26   and transistor 116 or control line CB and transistor 118.

27

28

(Page 1 of 2)

Page 29

1    In deciding if Plaintiff has proven that any of Defendants' products include structure

2  covered by a means-plus-function requirement, you must first decide whether the products

3  have any structure that performs the function I just described to you. If not, the claim

4  containing that means-plus-function requirement is not infringed.

5    If you find that any of Defendants' products do have structure that performs the

6  claimed function, you must then determine whether that structure is the same as or

7  equivalent to the structure I have identified in the specification. If they are the same or

8  equivalent, the means-plus-function requirement is satisfied by that structure of the accused

9  product. If all the other requirements of the claim are satisfied, the accused product

10  infringes the claim.

11    In order to prove that a structure in the accused product is equivalent to the structure

12  in the '497 patent, the Plaintiff must show that a person of ordinary skill in the field would

13  have considered that the differences between the structure described in the '497 patent and

14  the structure in the accused product are not substantial. The Plaintiff must also show that the

15  structure was available on the date the '497 patent was granted.

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff argues that Nintendo Co. Ltd., Nintendo of America and Macronix
2    International Co., Ltd. have actively induced another to infringe the '497 patent.  In order for
3    there to be inducement of infringement by those Defendants, someone else must directly
4    infringe a claim of the '497 patent; if there is no direct infringement by anyone, there can be
5    no induced infringement.  In order to be liable for inducement of infringement, Nintendo Co.
6    Ltd., Nintendo of America and Macronix International Co., Ltd. must:

7        1.    have intentionally taken action that actually induced direct infringement by
8    another;

9        2.    have been aware of the '497 patent; and

10        3.    have known that the acts it was causing would be infringing.

11    If Nintendo Co. Ltd., Nintendo of America and Macronix International Co., Ltd. did
12    not know of the existence of the patent or that the acts they were inducing were infringing,
13    they cannot be liable for inducement unless they it actually believed that it was highly
14    probable their actions would encourage infringement of a patent and they took intentional
15    acts to avoid learning the truth.  It is not enough Nintendo Co. Ltd., Nintendo of America
16    and Macronix International Co., Ltd. were merely indifferent to the possibility that they
17    might encourage infringement of a patent.  Nor is it enough that Nintendo Co. Ltd.,
18    Nintendo of America and Macronix International Co., Ltd. took a risk that was substantial
19    and unjustified.

20    If you find that Nintendo Co. Ltd., Nintendo of America and Macronix International
21    Co., Ltd. were aware of the patent, but believed that the acts it encouraged did not infringe
22    that patent, or that the patent was invalid, Nintendo Co. Ltd., Nintendo of America and
23    Macronix International Co., Ltd. cannot be liable for inducement.

24
25
26
27
28

1    I will now instruct you on the rules you must follow in deciding whether Defendants

2  have proven that claims 5-7 and 12 of the '497 patent are invalid.  Before discussing the

3  specific rules, I want to remind you about the standard of proof that applies to this defense.

4  To prove invalidity of any patent claim, Defendants must persuade you by clear and

5  convincing evidence that the claim is invalid.

6    During this case, the Defendants have submitted prior art that was not considered by

7  the United States Patent and Trademark Office (PTO) during the prosecution of the '497

8  patent.  The Defendants contend that such prior art invalidates certain claims of the '497

9  patent.  In deciding the issue of invalidity, you may take into account the fact that the prior

10  art was not considered by the PTO when it issued the '497 patent.  Prior art that differs from

11  the prior art considered by the PTO may carry more weight than the prior art that was

12  considered and may make the Defendants' burden of showing clear and convincing evidence

13  that a patent claim is invalid easier to sustain.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

An independent claim is a claim that does not refer to any other claim of the patent. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim is a claim that refers to at least one other claim in the patent. A dependent claim includes all of the elements of the claim to which the dependent claim refers, as well as the elements recited in the dependent claim itself.

For example, Claim 5 of the '497 patent is an independent claim and recites several elements. Dependent Claim 6 is a dependent claim that refers to Independent Claim 5 and includes additional elements. Dependent Claim 6 requires each of the elements of Independent Claim 5 plus the additional elements identified in Dependent Claim 6 itself.

You must evaluate the invalidity of each asserted claim separately. However, if you find that a dependent claim is invalid, then you cannot find the independent claim to which that dependent claim refers is not invalid. Conversely, an independent claim can be found invalid, even though a dependent claim to which it refers is valid.

In determining the validity of the patent in suit, you must consider the state of the prior art as it existed at the time of the claimed invention.  In your deliberations you must initially decide the invention date of the '497 patent.

In the absence of clear and convincing evidence to the contrary establishing some other date, the invention date of the claimed invention is presumed to be the date on which the original application for a patent was filed in the U.S. Patent and Trademark Office.  In this case, the filing date of the '497 patent is June 14, 1990.

When a plaintiff asserts a date of invention earlier than the date plaintiff's application was filed with the Patent and Trademark Office, plaintiff must prove such an earlier date of invention by proof that is clear and convincing.  The proof must unequivocally and convincingly show that the plaintiff conceived the plaintiff's invention at a date prior to the plaintiff's filing date and then reduced plaintiff's invention to practice.

It is necessary for plaintiff to carry the date of the plaintiff's invention back to a prior date by unequivocal and convincing proof, and show that plaintiff thereafter exercised reasonable diligence in reducing plaintiff's conception to practice.  The unsupported testimony of plaintiff to conception, diligence, or reduction to practice prior to the plaintiff's filing date is not enough.

If plaintiff successfully proves by clear and unequivocal evidence that plaintiff conceived the subject matter of the plaintiff's invention prior to the plaintiff's effective filing date therefore and between those dates exerted reasonable diligence in reducing such conception to practice then, in that event, you will find that the invention date is the date on which plaintiff conceived the subject matter of the plaintiff's invention.

A constructive reduction to practice is accomplished by filing an application with the U.S. Patent and Trademark Office disclosing the subject matter of the conception or invention and is deemed by law to be fully equivalent to an actual reduction to practice as used in this instruction.

1    Defendants can meet their burden of proving that a patent is invalid by showing by
2  clear and convincing evidence that the patent fails to name all actual inventors and only the
3  actual inventors.  This is known as the "inventorship" requirement.

4    To be an inventor, one must make a significant contribution to the conception of one
5  or more claims of the patent.  In other words, each inventor must contribute to the joint
6  arrival at a definite and permanent idea of the invention as it will be used in practice.

7    Persons may be inventors even though they do not physically work together or make
8  the same type or amount of contribution, or contribute to the subject matter of each claim of
9  the patent.  However, merely helping with experimentation by carrying out the actual
10  inventor's instructions or explaining the actual inventor's well-known concepts or the
11  current state of the art does not make someone an inventor.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

One who derives the conception of an invention from another is not an original inventor and may not obtain a valid patent.

A person who learns of an invention from another and then reduces the invention to practice has derived the invention from the inventor and is not the actual inventor.

Defendants contend that Mr. Komarek derived the inventions claimed in the '497 patent from disclosures given to him by Mr. Oishi.

In order to prove derivation, Defendants must show by clear and convincing evidence a prior conception of the invention by Mr. Oishi before Mr. Komarek, and that the prior conception was communicated to Mr. Komarek.

1    Defendants' allegations that the '497 patent is invalid because of incorrect

2    inventorship or derivation, and Plaintiff's allegation that the '497 patent is entitled to an

3    invention date prior to its filing date, are all subject to the requirement of "corroboration."

4    The Defendants cannot establish their incorrect inventorship or derivation claims by

5    relying on the uncorroborated statements of the allegedly-omitted inventor, Mr. Oishi. By

6    themselves, such statements are insufficient as a matter of law to constitute clear and

7    convincing evidence sufficient to overcome the presumption that the inventorship of the

8    '497 patent is correct. The Defendants must provide independent corroborating evidence in

9    addition to Mr. Oishi's own statements and documents. The corroborating evidence must

10   show that Mr. Oishi disclosed to others his complete thought expressed in such clear terms

11   as to enable those skilled in the art to make the invention. Moreover, the oral testimony of

12   an interested party cannot corroborate the testimony Mr. Oishi. Instead, the oral testimony

13   of Mr. Oishi must be corroborated by documents. Whether corroboration is sufficient is

14   judged under a "rule of reason" standard, taking all of the facts into account.

15   Similarly, the Plaintiff cannot establish an invention date earlier than the filing date of

16   the '497 patent by relying on the uncorroborated statements of the named inventor, Mr.

17   Komarek. By themselves, such statements are insufficient as a matter of law to constitute

18   clear and convincing evidence sufficient to overcome the filing date presumption. An

19   inventor must provide independent corroborating evidence in addition to his own statements

20   and documents. The corroborating evidence must show that the inventor disclosed to others

21   his complete thought expressed in such clear terms as to enable those skilled in the art to

22   make the invention. Moreover, the oral testimony of an interested party cannot corroborate

23   the testimony the inventor. Instead, the oral testimony of the inventor must be corroborated

24   by documents. Whether corroboration is sufficient is judged under a "rule of reason"

25   standard, taking all of the facts into account.

26

27

28

1    A patent claim is invalid if the patent application was not filed within the time
2 required by law. This is called a "statutory bar." For a patent claim to be invalid by a
3 statutory bar, all of its requirements must have been present in one prior art reference dated
4 more than one year before the patent application was filed. Here is how Defendants can
5 show that the patent application was not timely filed:

6         If a device or method using the claimed invention was sold or
7         offered for sale in the United States, and that claimed invention
8         was ready for patenting, before June 14, 1989. The claimed
9         invention is not being sold or offered for sale if the Plaintiff
10        shows that the sale or offer for sale was primarily experimental.
11        The claimed invention is ready for patenting if it was actually
12        built, or if the inventor had prepared drawings or other
13        descriptions of the claimed invention that were sufficiently
14        detailed to enable a person of ordinary skill in the field to make
15        and use the invention based on them.

16    For a claim to be invalid because of a statutory bar, all of the claimed requirements
17 must have been either (1) disclosed in a single prior art reference, (2) implicitly disclosed in
18 a reference to one skilled in the field, or (3) must have been present in the reference, whether
19 or not that was understood at the time. The disclosure in a reference does not have to be in
20 the same words as the claim, but all the requirements must be there, either described in
21 enough detail or necessarily implied, to enable someone of ordinary skill in the field of
22 memory array architecture looking at the reference to make and use the claimed invention.

23
24
25
26
27
28

A patent claim is invalid if the claimed invention is not new.  For the claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, these previous devices, methods, publications or patents are called "prior art references."  If a patent claim is not new we say it is "anticipated" by a prior art reference.

The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of memory array architecture looking at that one reference would be able to make and use the claimed invention.

Here is a list of the ways that Defendants can show that a patent claim was not new:

- if the claimed invention was already patented or described in a printed publication anywhere in the world before the invention date of the '497 patent claims;

- if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before the invention date of the '497 patent claims;

- if James Komarek did not invent the claimed invention but instead learned of the claimed invention from someone else;

Since it is in dispute, you must determine a date of conception for the claimed invention.  As I stated previously, conception is the mental part of an inventive act and is proven when the invention is shown in its complete form by drawings, disclosure to another or other forms of evidence presented at trial.

1    In determining the amount of damages, you must determine when the damages period

2    begins.  Damages generally commence on the date of Defendants' first infringement, but

3    going back no more than six years prior to the filing date of the Complaint, which would be

4    April 14, 2004.

5    The parties dispute whether damages are further limited to only accused products sold

6    after April 14, 2010, the filing date of Plaintiff's complaint, because of the marking statute.

7    If you find that Plaintiff authorized products embodying the invention of the '497 patent to

8    be sold or offered for sale in the United States, you must determine whether Plaintiff

9    notified Defendants of their alleged infringements.

10    Notification of infringement can consist either of actual notice or constructive notice.

11    Actual notice requires the affirmative communication of a specific charge of infringement

12    by a specific accused product or device.  To be effective, the notice of infringement must

13    come from the patentee, not from someone associated with the patentee.  A Defendant has

14    constructive notice of its infringement if you find that authorized products were "marked"

15    with the patent number.  "Marking" is placing either the word "patent" or the abbreviation

16    "pat." with the patent's number on substantially all of the authorized products sold in the

17    United States that include the patented invention.

18    Defendants bear the burden of proving by a preponderance of the evidence that

19    products that embodied the '497 patent were made, offered for sale, or sold in the United

20    States by Plaintiff or by someone acting for, under, or authorized by Plaintiff.  Once

21    Defendants satisfy their burden of proof, Plaintiff bears the burden of proof by a

22    preponderance of the evidence that all authorized products sold and offered for sale in the

23    United States were marked; or that it actually notified Defendants of the alleged

24    infringement.  If you find that the Plaintiff has not done so, then Plaintiff has forfeited its

25    rights to collect damages prior to the filing date of the Complaint and the damages period

26    begins on April 14, 2010, the date the Complaint was filed in this case.

27

28

1    I will instruct you about the measure of damages.  By instructing you on damages, I

2  am not suggesting which party should win on any issue.  If you find that Defendants

3  infringed any valid claim of the '497 patent, you must then determine the amount of money

4  damages to be awarded to Plaintiff to compensate it for the infringement.

5    The amount of those damages must be adequate to compensate Plaintiff for the

6  infringement.  A damages award should put the patent holder in approximately the financial

7  position it would have been in had the infringement not occurred, but in no event may the

8  damages award be less than a reasonable royalty.  You should keep in mind that the damages

9  you award are meant to compensate the patent holder and not to punish an infringer.

10    Plaintiff has the burden to persuade you of the amount of its damages.  You should

11  award only those damages that Plaintiff suffered by a preponderance of the evidence.  While

12  Plaintiff is not required to prove its damages with mathematical precision, it must prove

13  them with reasonable certainty.  Plaintiff is not entitled to damages that are remote or

14  speculative.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    If you find that: (1) Defendants do not infringe any of the asserted claims of the '497

2  patent or (2) all of the asserted claims of the '497 patent are invalid for any reason, then no

3  damages can be awarded.

4    If you find for Plaintiff and against Defendants on each of the foregoing issues,

5  however, you should award Plaintiff damages adequate to compensate Plaintiff for

6  Defendants' infringements.  Damages may be limited if you find that Defendants have

7  established their marking defense, in which case the damages period begins on April 14,

8  2010 and ends on August 31, 2010.

9    In all other cases, however, the damages period begins on April 14, 2004, six years

10  prior to the filing date of the lawsuit, and ends on August 31, 2010.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1      A royalty is a payment made to a patent holder in exchange for the right to make, use

2 or sell the claimed invention. This right is called a "license." A reasonable royalty is the

3 payment for the license that would have resulted from a hypothetical negotiation between

4 the patent holder and the infringer taking place at the time when the infringing activity first

5 began. In considering the nature of this negotiation, you must assume that the patent holder

6 and the infringer would have acted reasonably and would have entered into a license

7 agreement. You must also assume that both parties believed the patent was valid and

8 infringed. Your role is to determine what the result of that negotiation would have been.

9 The test for damages is what royalty would have resulted from the hypothetical negotiation

10 and not simply what either party would have preferred.

11      A royalty can be calculated in several different ways and it is for you to determine

12 which way is the most appropriate based on the evidence you have heard. One way to

13 calculate a royalty is to determine what is called an "ongoing royalty." To calculate an

14 ongoing royalty, you must first determine the "base," that is, the product on which the

15 infringer is to pay. You then need to multiply the revenue the defendant obtained from that

16 base by the "rate" or percentage that you find would have resulted from the hypothetical

17 negotiation. For example, if the patent covers a nail, and the nail sells for $1, and the

18 licensee sold 200 nails, the base revenue would be $200. If the rate you find would have

19 resulted from the hypothetical negotiation is 1%, then the royalty would be $2, or the rate of

20 .01 times the base revenue of $200.

21      If the patent covers only part of the product that the infringer sells, then the base

22 would normally be only that feature or component. For example, if you find that for a $100

23 car, the patented feature is the tires which sell for $5, the base revenue would be $5.

24 However, in a circumstance in which the patented feature is the reason customers buy the

25 whole product, the base revenue could be the value of the whole product. Even if the

26 patented feature is not the reason for customer demand, the value of the whole product could

27

28                      (Page 1 of 2)

1  be used if, for example, the value of the patented feature could not be separated out from the

2  value of the whole product.  In such a case, however, the rate resulting from the hypothetical

3  negotiation would be a lower rate because it is being applied to the value of the whole

4  product and the patented feature is not the reason for the customer's purchase of the whole

5  product.

6        A second way to calculate a royalty is to determine a one-time lump sum payment

7  that the infringer would have paid at the time of the hypothetical negotiation for a license

8  covering all sales of the licensed product both past and future.  This differs from payment of

9  an ongoing royalty because, with an ongoing royalty, the licensee pays based on the revenue

10  of actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a

11  single price for a license covering both past and future infringing sales.

12        It is up to you, based on the evidence, to decide what type of royalty is appropriate in

13  this case.

(Page 2 of 2)

1   In determining a reasonable royalty, you may consider whether defendants had any

2 noninfringing alternatives, including commercially acceptable noninfringing alternatives, to

3 taking a license from plaintiff and whether that would have affected the reasonable royalty

4 the parties would have agreed upon.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

You must not award plaintiff more than the amount of damages adequate to compensate plaintiff for defendants' infringement. You must not include any additional amount for the purpose of punishing defendants or setting an example.

You may not include damages that are speculative, only possible, or that are based on guesswork.

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

1    Because you must base your verdict only on the evidence received in the case and on

2    these instructions, I remind you that you must not be exposed to any other information about

3    the case or to the issues it involves.  Except for discussing the case with your fellow jurors

4    during your deliberations:

5    •    Do not communicate with anyone in any way and do not let anyone else

6         communicate with you in any way about the merits of the case or

7         anything to do with it.  This includes discussing the case in person, in

8         writing, by phone or electronic means, via email, text messaging, or any

9         Internet chat room, blog, website or other feature.  This applies to

10        communicating with your family members, your employer, the media or

11        press, and the people involved in the trial.  If you are asked or

12        approached in any way about your jury service or anything about this

13        case, you must respond that you have been ordered not to discuss the

14        matter and to report the contact to the court.

15   •    Do not read, watch, or listen to any news or media accounts or

16        commentary about the case or anything to do with it; do not do any

17        research, such as consulting dictionaries, searching the Internet or using

18        other reference materials; and do not make any investigation or in any

19        other way try to learn about the case on your own.

20    The law requires these restrictions to ensure the parties have a fair trial based on the

21   same evidence that each party has had an opportunity to address.  A juror who violates these

22   restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any

23   outside information, please notify the court immediately.

24

25

26

27

28

1         If it becomes necessary during your deliberations to communicate with me, you may

2   send a note through the Court Security Officer, signed by your presiding juror or by one or

3   more members of the jury.  No member of the jury should ever attempt to communicate with

4   me except by a signed writing; I will communicate with any member of the jury on anything

5   concerning the case only in writing, or here in open court.  If you send out a question, I will

6   consult with the parties before answering it, which may take some time.  You may continue

7   your deliberations while waiting for the answer to any question.  Remember that you are not

8   to tell anyone-including me-how the jury stands, numerically or otherwise, until after you

9   have reached a unanimous verdict or have been discharged.  Do not disclose any vote count

10  in any note to the court.

1    A verdict form has been prepared for you.  After you have reached unanimous

2  agreement on a verdict, your presiding juror will fill in the form that has been given to you,

3  sign and date it, and advise the court that you are ready to return to the courtroom.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28